Judge Nicholas
delivered the Opinion of the Court.
ÍN 1821, Richard Board, in his last sickness, made a mm-cl,Pat‘ve will — proved and recorded since his death,— by which he devised his whole estate to Iris wife durin widowhood. Site administered on his estate, and i 1825, married McCans. Guardians were then appointed to the infant children of Board; at whose instance, commissioners were appointed by the county court, and dower allotted to Mrs. McCans, in bis real estate and slaves. 3 tfq
On a bill filed against her by the infant children, for settlement and distribution, the circuit court, considering her as not entitled to any portion of the slaves* ordered those assigned to- her for dower, to be surrendered to the children; and the correctness of that portion of the decree presents the only question that need be particularly noticed.
in support of the decree, it is contended, cither that the slaves passed to her by the nuncupative will, and in that case, she lost them by her marriage in breach of the condition upon which they were devised to her ; or* if they did not pass by the will, then she has lost all claim to them by failing to renounce the provisions made for her by the will, according to the statute.
As real estate cannot be devised by nuncupative will, and as our statutes have converted slaves into real estate, and directed them to pass by will as land, there is but little plausability in favor of the first position.
The 0*her is entitled to more consideration. The twenty f°urth section of the act concerning wills, 2 Dig. 1246, declares, that a widow not making a renumcation of her *341 husband’s will, as therein prescribed, “shall have no more of her husband’s slaves and personal estate than is given her' by his will.” At the time of the passage of this act, slaves were personal estate, and, as such, would pass by a nuncupative will. Is this part of the act still 3L> force, so far as regards this question, notwithstanding’' subsequent statutes have prevented slaves from passing by such will ? We are inclined to think not. It would be at war with the equitable policy upon which this portion of the statute was framed, to malte it apply to any description of property which it was not m the power of the testator to pass by the description of will which it requires to be renounced.' It would be to thwart, rather than further, the legislative intent, if we were to determine, that her failure to renounce a will, such as the law does not allow to pass slaves, should forfeit her dower claim in them. In one of two ways, she certainly ought to escape the penalty imposed by the statute for failiug to renounce. Either, because a nuncupative will is not now such an one as the statute requires to be renounced ; or, by considering the act concerning wills, of 1797, and the act of 1800, directing slaves to pass by wills as land, as in pari materia, and to be construed together as one act, and making the latter a repeal of so much of the former as falls within this subject; nor can any'novelty be imputed to this mode of treating the two acts. Nothing is more common than for courts to thus biend together different acts, or parts of acts, relative to the same subject, in order to extract an operative and consistent legislative intention from the whole. Infinite mischief would ensue, and the legislative will would be as often violated as fulfilled, if this were not done. All statutes upon the same subject, from mere necessity, must be taken and construed together, in order to ascertain the legislative intention; which intention, in all rational jurisprudence, must be the guiding star of the courts, in their endeavors to achieve the true application of legislative rtiles. Former rules, of ascertained intent-, and based upon an obvious policy, or principle, must as necessarily yield to, and be modified to suit subsequent enactions, which so far alter the law as to change tiie operation of the rule, *342 as to its policy, or principle, as if the prior rules were repealed by the subsequent in express terms, or as if they stood in direct repugnance the one to the other. Every thing that has been enacted upon any given subject, constitutes altogether, in mass, the materials from which the courts are bound to extract a true legislative intention, which, in all its different modes of application, shall, as near as practicable, be consistent with itself.
Widow retained the whole real estate and slaves, and pro ■ vided for the children — the income and expenses to be set off against each other. For their support after she is endowed, and their part surrendered, she will be entitled to a compensation.
If these principles be correct — of which we entertain no doubt — there can be but little room for dispute as to the proper solution of the question before us. For there can be no doubt that the legislature, blended slaves with personal estate, in the forfeiture to be incurred by the widow, for failing to renounce, because either of them, as the law then stood, would pass by a will that would pass the other. The subsequent change of the law in this particular, and the abstraction of slaves from the operation of a nuncupative will, should be deemed a pro tan-to revocation, or repeal, of the prior law. At the passage of the first act, the widow had the power of electing to take the provision made for her in slaves by her husband’s nuncupative will; thence the propriety of restricting her to that provision unless she renounced in reasonable time. But as the law now stands, she has no such election ; she cannot, as in this case, take that portion of the provision, which her husband intended for her ; hence the propriety and necessity of saying, that, so far as regards slaves, the twenty fourth section of the act concerning wills, no longer applies to nuncupative wills.
As the off-setting of the use of all the slaves and real estate, against the cost of schooling, clothing, and boarding the children, is the most that can be done for Mrs. McCans, under the circumstances, we think their mutual demands against each other, should be closed in that way, up to the 1st of January, 1826. If any of them have lived with her since that time, she should receive from them reasonable compensation therefor. But as she has not specifically prayed relief over against the children, or their guardians, to that effect, in her cross bill, she cannot obtain it in this suit.
*343 The decree must be reversed, with costs, and cause demanded, with directions for a decree to be entered, quieting .McCans and wife in the possession of the real estate and slaves allotted to her for dower, and dismissing the bills and cross bills, with costs, but without prejudice to any claim of McCans and wife, for the board, clothing, or tuition, of either of the complainants, since the 1st of January, 1826.