## FRANK LEWIS AND WIFE v. THE HEIRS OF WM. AYLOTT.

1. NUNCUPATIVE WILL.—Real estate cannot be devised by nuncupative will.

2. PROBATE OF WILL—WITNESS.—A devisee or legatee under a will cannot prove the will, either written or verbal, without annulling the devise or bequest.

3. CONSTRUCTION OF STATUTES.—The "act concerning wills," (Paschal's Dig., 5361,) the "act concerning conveyances," (Paschal's Dig., 997,) and the "act adopting the common law," (Paschal's Dig., 978,) being acts passed at the same session of the Congress of the Republic, should be construed together, and so that all parts of said acts not repugnant may stand.

4. SAME.—The act concerning wills (of March, 1840, Paschal's Dig., 5174–5361) so far as not inconsistent with the probate act of 1870, was not thereby repealed; and the first section of the wills act, prescribing who may make wills and what may be disposed of, and the tenth section, prescribing that a bequest to a witness shall be void, are believed to be still in force.

5. WITNESS—CONSTRUCTION OF STATUTE.—It is believed that the act of May 19, 1871, (Paschal's Dig., 6826,) removing the disabilities of witnesses on account of interest, &c., applied to ordinary suits in the courts, and it cannot be construed so as to apply to *ex parte* proceedings, or the proof of wills, deeds, mortgages, &c.

6. SAME.—The prohibition in the second section of said act, (Paschal's Dig., 6827,) "that in actions by or against executors, administrators, or guardians, * * neither party shall be allowed to testify," &c., was not intended to protect the executor, administrator, or guardian, but to protect those beneficially interested; and in a proceeding to probate a nuncupative will, it was improper to allow parties interested to testify to the "statements by or transactions with the deceased," which facts constituted the will sought to be admitted to probate.

APPEAL from Galveston. Tried below before the Hon. A. P. McCormick.

.The facts are given in the opinion.

*Walker & Walker*, for appellants.

This suit was instituted by the appellants to probate the nuncupative will of Aylott, deceased, devising to them three lots of ground in the city of Galveston. The defendants filed

a demurrer to the petition, which was sustained on the ground that real estate could not thus be devised, but only by written will; and although the facts had been submitted to the jury under a denial of the facts alleged, who found in favor of the plaintiffs, the court, for the reason assigned above, refused to admit the will to probate, and adjudged the plaintiffs to pay the costs. The appellants assign as error the judgment of the court sustaining the demurrer, the refusal to probate the will, and the adjudication of the costs against the plaintiffs.

As to the first and main point: can real estate pass by nuncupative will? Appellants contend that at common law lands were devisable by will—the common law being the rule here of decision, and the statute regulating wills imposing no restriction other than as to the mode and manner and the circumstances under which nuncupative wills may be made, and making no discrimination as to amount or character of property devisable or the subject of bequest; that not only is there no limitation by the letter of the statute against the right thus to devise, but the construction by implication unfavorable to that right is admissible. "Lands would pass by will at common law." (3 Lomax, 1, 2; 1 Blackst. Comm., 299,) [374.]

"After the Norman conquest lands held in socage could be devised, and all allodial grants, as well as particular customs in cities and boroughs; and even in feudal lands, the ancient custom obtained by indirection. (See Statute of Uses, 27 Hen. VIII; Sanders on Uses, 69; Statute of Wills, 32 Hen. VIII; 3 Wash. on Real Prop., 427; 8 Bacon's Abr., 441.)

"Under this statute lands could be devised by unwritten will." (Brown v. Sackville, Dyer, Croke Eliz.)

The statute of wills (29 Charles II, sec. 5) and the statute of frauds were adopted by all the States of the Union, more or less modified. (See 3 Shep. Touchstone.) Hence the current of decisions all tend to give validity to a nuncupative will only so far as personal property is disposed of.

It is frequently laid down, though inaccurately, as we

think, that .by the common law lands and tenements were not devisable by last will and testament. The feudal system innovated upon the old common law in that respect, and did establish the above rule, which grew up and arose out of the peculiar institutions consequent to that system and its reasons; yet, in certain boroughs and cities the old law to the contrary was preserved, and hence we observe the qualification in all the books to the above general rule, "except by particular custom."

See 8 Bacon's Abr., title Wills and Testaments (D,) where in note (b) it is remarked that "the true reason seems to be from the nature of the feudal tenure, and the relation that was first established betwixt the lord and his tenant." It is stated in 3 Lomax, 1, that it is generally agreed that the power of devising lands existed in the time of the Saxons; but upon the establishment of the Normans it was taken away because it was inconsistent with the feudal law." "In some cities and boroughs lands may pass as chattels by will nuncupative or parol, without writing." (See note, (a) 8 Bacon's Abr., title Wills, &c., (D,) citing 1 Ins., 111; Perk., sec. 476; Wood, part 1, 487.)

In the early ages, when reading and writing were confined to a very few, wills were generally verbal, it would seem, from the necessity of the case; and even as late as 32 Hen. VIII, when was enacted the statute of wills, lands and manors, it was thereby provided, were devisable, "in writing or otherwise," (8 Bacon's Abr., Wills, &c. (D;) and see note, (a,) showing that the writing by testator was held not essential, but the will, supported by memoranda taken of his intentions, without the testator having ever seen the same—a proceeding quite similar to the requirement now of reducing to writing after death the verbal declarations—the analogy is referred to, to exhibit the fact that at that day even lands were devisable without writing, and, too, under a statute which attempted to advance in the direction of the subsequent legislation mak-

ing the written will signed by the testator indispensable to pass lands.

Whatever force may be assigned to the system of English laws regulating the subject of the devise of real estate as applicable in the United States, it must be borne in mind that Texas tenures are allodial, and originated under the civil law, in which the feudal system and its artificial reasons never had a place, and that although the common law was adopted as a rule of decision, none of the English statutes nor the rules of decisions founded on them were adopted. (See 31 Tex.)

This doctrine of nuncupative wills is derived from the civil law, and is of very ancient date. (Cowp., 90.) It was incorporated into the system of the common law, and acted upon *proprio vigore* long before the statute of frauds and the statute of wills. (Prince *v.* Hazleton, 20 Johns., 519.) And by the civil law nuncupative wills were not restricted in their effects as to the kind of property on which they might operate. A testator by nuncupative will could dispose of all his effects. (Ibid., p. 519.) All the English statutes, as of wills and of frauds, "were intended as remedies for the frauds and impositions which grew out of the common law. The various regulations introduced were for the express purpose of serving as checks and barriers against fraud. The statute does not purport to be declaratory of the common law, but is a remedial statute." (Prince *v.* Hazleton, 20 Johns., 502.)

Section 1 of our statute of wills (Paschal's Dig., art. 5361) provides the mode and manner of devising or bequeathing all manner of property by written will. Section 6 of the same requires nuncupative wills (and thereby recognizes them) to be made under the circumstances and in the mode therein named. In one case named in the section referred to, the nuncupative will is restricted to $30; in all other cases, wholly unlimited. Now, unless under the common law the term "nuncupative" will restrains the grant or gift to personal property, it would seem that our statute has simply put

13

such wills on the same footing as written wills, subject to the conditions specified. The authorities cited, and the history of wills at common law, seem to show that in so far as the term "nuncupative" is concerned, derived as it was from the civil law, where it was used to convey all of a man's effects, that it did not import a restriction on its power to pass real estate, but its peculiarities related rather to the circumstances under which it was brought into requisition. It seems to have been restricted as to the subjects of its operation by statute, both in England and the States of the Union, and not by the common law. These restrictions are traced back by statute to a very remote antiquity, yet not so far into the past but that we discover when there were none at common law; and also when, under the statute of wills, (32 Hen. VIII,) lands passed under the construction given to that statute, by forms and proceedings varying but little from the nuncupative will, as contemplated by our own statute.

The frauds and impositions practiced under a system affording such temptations were, at an early day, cut off by limitations of the amount of bequests of personal property to a very inconsiderable sum, and forbidding devises thus of real estate entirely, both in England and America. In America, at least, in some of the newly-settled western and southern States, the value of real estate did not present a peculiar ground of jealousy, if we may judge from the early legislation of Ohio and Texas. In Texas, when the law was enacted, January, 1840, if a testator had been restricted from giving his lands by nuncupative will—the property then of least value to himself or others—a species of property then proverbially cheap, unmarketable, and valueless,—and were permitted to give in that mode *ad libitum* his money and personal property of all kinds without limitation as to amount, surely such legislation would be suggestive of the play of Hamlet with Hamlet's part omitted. To suppose that lands were not embraced by the intention of the Legislature is to rest the matter on reasons technical and artificial, and which must have been

foreign to the legislative will, and wholly inconsistent with the condition of the people for whose benefit the law was enacted. The act in question showed no invidious or jealous discrimination whatever against wills of that kind, for it will not be pretended but that, even now, a nuncupative will may pass personal property to the amount of millions, as well as for the most insignificant sum.

In Ohio, the state of legislation has been the same as in Texas. Possibly in no other State has this concurrence on this subject existed, owing to the almost universal statutory restrictions as to kind of property and amount. It was held, in Ohio, under their statute of 1824, that a nuncupative will did pass real estate. The statute referred to, so far as its bearing on the case now before this court is concerned, is identically the same. "The act of 1808 repeals the law of 1805, and prescribes the mode of execution of a verbal will, without any direction as to the nature or limitation of the estate it may operate to convey. The first section of this act provides, however, that every male person, &c., shall have power, by last will and testament, in writing, to dispose of both real and personal estate. If personal property were not here enumerated, it might be contended, perhaps, with some plausibility, that a verbal will was not intended to pass the realty. But as the term written, as used in this section, applies to both species of estates, and as the act makes provision for the due execution of a verbal will, and leaves it without restriction as to what may pass under it, it would seem to be general in its application, and nothing short of statutory provision can limit it to the personalty. The same provision is copied into the acts of 1810, 1816, and 1824, in relation to verbal wills. The act of 1824 was in force when this will under which the defendant claims was made; and if we are right in our deductions, judgment should be given for the defendant; and we are also confirmed in this opinion by the fact that the act of 1831 expressly restricts nuncupative wills

to personalty, without limitation as to the amount." (Gillis and Wife *v*. Weller, 10 Ohio, 463.)

The foregoing extract is quoted from the opinion as containing a conclusive view of the subject in hand, and is entirely applicable and in point.

The other points involved under appellant's assignment are submitted without argument.

*Burroughs* and *Allen*, for appellees, cited Hunt *v*. White, 24 Tex., 654; 2 Greenl. Ev., sec. 673; Sedg. Cons. and Stat. Law, 123; Lucas *v*. Brooks, 18 Wall., 436; 2 Smith L. C., 104, and authorities cited; 21 Tex., 573; Mitchell *v*. Vickers, 20 Tex., 384; Renn *v*. Samos, 33 Tex., 763; Worland *v*. Dill, 9 Florida, 45; Smith *v*. Smith, 64 N. C., 52.

Ireland, Associate Justice.—W. Aylott died in the city of Galveston, possessed in his own right of several lots of ground, some of which were improved, and upon which he lived. When he died he was about sixty-five years old. He had no family, and left as his heirs, brothers.

The appellants Lewis lived in Aylott's house with him at the time of his death. He made no written will; and this suit was brought by appellants to establish and have admitted to probate what they style the nuncupative will of said Aylott. The heirs of Aylott appeared and contested the application.

There was a verdict in favor of Lewis, but the court refused to order the will probated, upon the ground that the will related to nothing but real estate specifically named; and as real property could not be devised by a nuncupative will, judgment was entered for the contestants, from which they have appealed.

Appellants Lewis introduced themselves as witnesses to prove the will, to which the contestants objected on the ground, "1, The entire devise being to them, they are not proper persons to establish the same; 2, they are man and

wife; and, 3, they are parties to the record, and have an interest in the event of the suit." These objections were overruled, and appellees excepted.

The two important questions for our consideration are, whether real property can be devised by nuncupative will, and whether Lewis and wife were competent witnesses to establish the will. The first of these questions is the only one discussed by counsel, and on this point the discussion by appellants' counsel in their brief is very thorough and interesting.

The title to real property would not pass by will at common law. The first time it was effected in England it was done by an evasion of the common-law rule under the statute called the "Statute of Uses." (Wigram on Wills, 35; Williams on Real Property, by Rawl., 59.)

The statutes of 32 and 34 of Henry the VIII were the first authority to dispose of real property by will, and these statutes were restrictive in their character, and it was not until the restoration of Charles the II that the feudal tenures were abolished and the right of devising freehold lands became complete and universal.

The practice or custom of making nuncupative wills grew up and was allowed from the necessity of the case, and had its origin among seamen, soldiers, and persons usually possessed of small fortunes, and, generally, they have been restricted as to the amount of property they were allowed to pass.

Can a nuncupative will pass title to real estate lands?

In opposition to what seems to be the general rule, we are cited to the case of Lessees of Gillis *v.* Weller. (10 Ohio, 463.) This is a short case, and does not bear evidence of very great consideration.

It seems that the territorial act of 1795 conferred the right, in Ohio, of making nuncupative wills, and that it was construed to confer the power of passing real and personal estate.

In 1805 the act of 1795 was repealed, and by this repealing act personal property alone could pass by nuncupative will.

Again, in 1808, the act of 1805 was repealed, and this last act contains no limitation or restriction as to the character of property that might be conveyed by verbal will.

The learned judge says: "The first section of this act provides, however, that every male person shall have power by last will and testament in writing to dispose of both real and personal estate.

"If personal property were not here enumerated it might be contended, perhaps, with some plausibility, that a verbal will was not intended to pass realty." The force of this reasoning is not very perceptible, and it is very likely that the distinguished judge who delivered that opinion was more or less influenced by the fact that the act which prohibited the disposition of real property by nuncupative will had been repealed. This case stands alone, so far as our researches have gone, and it is opposed by the courts of Kentucky, Florida, North Carolina, Pennsylvania, and all the text writers to which we have access. (Worland *v.* Dill, 9 Fla., 45; Smith *v.* Smith, 64 N. C., 52; Palmer *v.* Palmer, 2 Dana, 390; McCans *v.* Board, 1 Dana, 340.)

Is there anything in our statute to aid appellants on this point?

The first section of the act of February 5, 1840, on the subject of conveyancing, (Paschal's Dig., art. 997,) declares "that no estate of inheritance or freehold, or for a term of more than five years, in lands and tenements, shall be conveyed from one to another unless the conveyance be declared by writing, sealed and delivered."

There are but two general modes of· acquiring title to property: one by descent, and one by purchase. (Williams on Real Property; Rawle, 107; 4 Kent's Comm., 415.)

A party taking by devise is deemed to take by purchase; and while we do not ordinarily, in speaking of the transmission of title to property, when using the word conveying, in-

clude property acquired by devise, still, we may refer to this statute to show the general policy of the State.

By reference to the provisions of the act referred to, it will be seen that the Legislature had the subject of wills in view, as the word devise is used.

As we have seen, at common law lands could not be devised; and it is believed in all the States testamentary power is a subject of statutory regulation.

As in the case cited from 10th Ohio it is contended that as by will all persons (males) are allowed by writing to make testamentary disposition of their property, real and personal, and that in the clause governing nuncupative wills there is no restriction as to the character of the property that may be disposed of, it follows that lands may be transmitted by verbal will.

We cannot adopt this reasoning. We must suppose that when the provision with reference to nuncupative wills was adopted, that the Legislature meant to provide for the disposition of that species of property that aforetime might be conveyed by verbal will.

This view of the law is strengthened by the fact that we have adopted the common law, which is our rule of civil conduct when not controlled by statute. (Paschal's Dig., art. 977.)

The statutes of wills and the act adopting the common law were passed at the same session of Congress, and if not repugnant to each other they must both stand.

It will be seen too that our statute concerning conveyancing was also passed at the same session.

In view of this legislation, and the fact that nuncupative wills are usually restricted in their operation to chattels, and the further consideration that such wills are not favored in any portion of christendom, we think the conclusion is irresistible that real property cannot pass by nuncupative will. Nuncupative wills and death-bed gifts, *donatio causa mortis,* in most of their features and characteristics, are alike. A

recovery of the donor, in each case, revokes the gift or bequest, and each operates on personal property only. (Meach v. Meach, 24 Vt., 593.)

It is insisted, that although the will might not be sufficient to pass the title to the property in controversy, still appellants were entitled to have the will probated, and that they are entitled to costs.

We are all, however, of opinion that appellants are not entitled to have the will probated.

Two of the principal witnesses to prove the will are appellants Lewis and wife. In the language of the court in 20 Johnson, 502, and in Mitchell v. Vickers, 20 Tex., 377, the proof to admit a nuncupative will to probate must be of the clearest and most convincing character.

In Prince v. Hazleton, 20 Johnson, 502, the chancellor uses this language: "There is another consideration that imparts to this subject of nuncupative wills a momentous character, and ought to incline us to give them as little countenance as possible.

"As soon as a nuncupative will is made, it becomes the interest of the legatees that the party's sickness should prove to be his last sickness, for if he recovers, the will of course falls to the ground. Not so with a written will." "In cases of nuncupative wills the legacies operate as bounties upon the death of the testator."

We do not, however, place our decision on the insufficiency of the testimony. We have made these extracts merely to show with what disfavor these wills are looked upon by courts.

We are of opinion that the two devisees, Lewis and wife, were improperly allowed to testify.

As before remarked, this branch of the case is not argued or noticed in briefs of either party, and we are left to conjecture the grounds upon which they were allowed to give their evidence.

The act of 19th May, 1871, reads as follows: "1st. In the courts of this State there shall be no exclusion of any witness

on account of color, nor, in civil actions, because he is a party to or interested in the issue tried.   2d.  In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party, or required to testify thereto by the court."   (Paschal's Dig, 6826-7.)

It is presumed that the court below was controlled by this statute.   It is so comprehensive in its terms as that by a fair construction it will embrace the proof of wills.

If it does, will it not be too broad to meet the requirements of appellants ?   The better view seems to be that the act was only intended to apply to ordinary suits in the courts of the State, and that it cannot be so construed as to apply to *ex parte* proceedings or proof of wills, deeds, mortgages, &c.

It is true that when the heir or intended party hears of the application to probate a will, and appears, the proceeding may result as in this case in an issue being formed and a regular trial, but this cannot alter the construction we are inclined to give to this statute.

Many of the provisions of the statute of wills of 1840 are embraced in the act of 1870, concerning estates.   There may be a question whether the act of 1840 could be superseded by an act having for its title "An act prescribing the mode of proceeding in the District Court in matters of probate," but we give no opinion on this point.   There are some important provisions in the wills act of 1840 that are not embraced in the act of 1870, and are believed to be still in force.

The first section (Paschal's Dig., art. 5361) prescribes who may make wills and what they may dispose of; and the tenth section, (Paschal's Dig., art. 5370,) prescribes that a bequest to any subscribing witness to a will shall be void, and the party shall be required to appear and prove up the will.   These provisions (and there may be others) are believed to be still in force.

Nothing but the clearest and most indisputable language can ever be held to repeal the law which renders a devisee or legatee incompetent to prove a will.

The act of 1840 required wills to be proved by credible witnesses; which means competent witnesses.

Every dictate of humanity and the daily lessons of life warn and teach us the folly and impropriety of placing not only the fortunes but the lives of the sick and the aged, and, indeed, all the afflicted, at the mercy and avarice of the corrupt and the vicious. That a code of laws should allow devisees to go before a clerk, or even a judge, maybe, on an *ex parte* proceeding, and prove up a will giving to strangers an estate, leaving kindred and family behind without provision, cannot be readily admitted, and would deserve universal condemnation.

But does not the second section of the act, under which it is claimed that appellants could prove up this will, stand in the way? Here the heirs are the parties. Is the statute not as effectually a bar to their testifying as if the contestant was an administrator, or any other trustee holding for the benefit of the heirs and creditors? The prohibition contained in the second section was not intended to protect an executor, administrator, or guardian, although they are named. It was intended to protect the parties beneficially interested—heirs and creditors.

In proving up a will, especially a nuncupative will, the witnesses, interested parties in this case, could speak of nothing else but "statements by or transactions with the deceased;" and without extending these remarks, we hold that real estate cannot be devised by nuncupative will, and that a party taking as devisee or legatee under a will cannot prove the will, either written or verbal, without annulling the devise or bequest. The judgment is affirmed.

AFFIRMED.