ELIZA WATTS v. JOHN M. HOLLAND.

(Case No. 1023.)

1. NUNCUPATIVE WILL.— Real estate cannot be devised by nuncupative will.

2. PRACTICE — NUNCUPATIVE WILL.— In a proceeding to establish a nuncupative will between the party claiming to be executor under it and the heirs, as contestants, in which a fraudulent combination was charged as existing between the party claiming to be executor, who was himself a witness, and the other witnesses to the will, it is the right of the contestants to have the witnesses placed under the rule so that they should not hear the testimony of each other. A refusal to place the witnesses under the rule in such a case, if requested, is cause for reversal.   The discretion ordinarily confided to the judge is subordinate to law which confers the right to have the rule enforced.

3. JUDICIAL DISCRETION.— Judicial discretion can never be exercised to dispense with the observance of recognized rules for the protection of rights.

4. EVIDENCE.— It is the right of a party to have witnesses placed under the rule in civil causes.

5. NUNCUPATIVE WILL — EXECUTOR.— One named as executor by a nuncupative will cannot be a witness to establish it. His disability was not removed by art. 6826, Pasch. Dig.

APPEAL from Travis. Tried below before the Hon. J. P. Richardson.

Suit brought by the appellee to establish the alleged nuncupative will of Hiram P. Ferrill, deceased, which purported to devise to Presilla Ferrill a certain designated lot in the city of Austin, and providing that John M. Holland, as executor of his said will, should take possession of the remainder of his property, and with it pay his debts. On the trial of the cause the plaintiff Holland testified as one of the three and only witnesses who were examined or offered to establish the facts relating to the making of the alleged nuncupative will. Mrs. Eliza Watts, sister of the deceased, joined by her husband, contested the probate of the will. The other two witnesses were Adela Ferrill and Anthony Ferrill; Adela was the mother of the devisee, Presilla, and Anthony Ferrill was the husband of Adela and the step-father of Presilla Ferrill. The petition alleged that the nuncupative will was made by the deceased at the house and home of the two last-mentioned witnesses; and also that the deceased had resided with Anthony and Adela for ten days preceding his death. The petitioner alleged in that connection that the deceased had, some months before his death, ceased to reside at his own home, and had during that period boarded with petitioner, Holland; that the deceased, whilst thus boarding at his house, became so sick that he, the deceased, "thinking he could be better cared for, removed and went to the home and house of said Adela and Anthony Ferrill, and there died; that said Ferrill, when taken sick, was not at his house, but was boarding with petitioner, and that during his last sick-

ness he removed to the house of Adela and Anthony Ferrill; " that whilst the deceased was thus sick at their house, he made said nuncupative will, in the presence of the petitioners Holland, Adela Ferrill, Anthony Ferrill, Presilla Ferrill, and "another person, a colored man, whose name and residence," the petition alleged, was unknown.

The contestant alleged her heirship to the estate of the deceased, and in her answer charged a fraudulent combination between the petitioner, the other two witnesses, and the devisee, to defraud her, by a fabrication of a pretended will, without foundation in truth. The contestant filed exceptions, both general and special, to the original and amended petition of the plaintiffs, which were overruled as to all matters excepted to, save as to the want of the averment that the witnesses to the will were credible witnesses; and on leave granted verbally by the court, the plaintiff amended in that respect, and the contestant excepted:

The court in its charge to the jury directed them in effect to find whether the allegations of the plaintiffs' petition were true or not; or to find a part to be true and a part of them not true, stating their finding as to such facts in their verdict. No direction as to the law of the case was otherwise given to the jury in the charge. It does not appear that either of the parties asked the court to give other or further instructions to the jury. The record contains a bill of exceptions taken by the contestants, showing that they "then and there excepted" to the charge; for what reason, however, is not expressed.

Verdict of the jury finding the facts alleged to be true; upon which the court rendered judgment admitting the will to probate in the terms and words which the petition alleged constituted the will, and the court proceeded to decree the lot of land "to be the property of Presilla Ferrill, in accordance with the provisions of said will, and

that the executor shall deliver the same to her, with all the title papers thereto, as soon as the same can be conveniently done; and that the remainder of said property the said executor shall sell and pay off and discharge the just and honest debts of said Hiram P. Ferrill, whenever they are proven and presented to him for payment."

The assignments of error raise the questions: Whether or not the court erred in its action on the exceptions of the contestants to plaintiff's position; whether there was error in the charge of the court, or error in the judgment or decree as the same was rendered; whether the court erred in refusing to place the witnesses under the rule, at the trial of the cause, when requested to do so by the contestants; and also whether there was error in the exclusion by the court of certain testimony which was offered by the contestants, and in the admission of the testimony of the plaintiff, John M. Holland.

*James H. Burts*, for appellants.

*John Dowell*, for appellee.

WALKER, J. COM. APP.— Real estate cannot be devised by nuncupative will. Lewis *v.* Aylott, 45 Tex., 190. The judgment of the court, therefore, predicated upon the finding of the jury, in so far as it gave effect to the bequest made to Presilla Ferrill of the lot in the city of Austin, was erroneous. The judgment is otherwise objectionable and erroneous in respect to its adjudication of the title of the lot to Presilla Ferrill. The proceeding was under the statute to probate the will; and it was beyond its scope thus to determine the right of the devisee to immediate ownership, possession and custody of the title papers. If, however, there were no other errors than that for which the judgment ought to be reversed, it would be proper for the supreme court to reform it, and render such judgment as the district court ought to have rendered. Burleson *v.*

Burleson, 15 Tex., 423; Pitner v. Flannegan, 17 Tex., 7; Bracken v. Neil, 15 Tex., 109; City of Brownsville v. Basse, 43 Tex., 441.

Upon the facts found by the jury in their verdict, there would have remained no further matter of fact to be ascertained, and a proper judgment, in such case, would be rendered by the supreme court, correcting the error of the court below as to the legal deductions and consequences which should follow the verdict. City of Brownsville v. Basse, *supra*.

But we think there was such error committed on the trial of the case as will not permit the verdict which was found to stand, and to constitute a basis for any judgment to be rendered upon it against the contestants. The first ground which the appellants assign as error is well taken; it complains that the court erred in overruling their motion to put the witnesses under the rule which requires them to give their testimony in court separately, and not within the hearing of each other. This rule the contestants asked the court, by motion to that effect, to apply to the witnesses on the trial, after the parties had announced their readiness for trial, and before the witnesses were called to testify; the plaintiff resisted the motion, and the court overruled it, with the remark that "he knew of no rule of law requiring witnesses to be put under the rule in civil cases, and that this was a civil case."

There is such a rule, well recognized in England and America, applicable alike to criminal and civil cases; it belongs to, and is but a part of, a system of wise rules which have been established by the courts through the experience of ages, as best calculated to develop truth, expose falsehood, and to frustrate fraud. The right and duty of courts alike unite to require their observance. They are essential to the procurement of a fair trial, and to the illustration of the definition given of a court: "A place where justice is judicially administered; a

place where rights are determined by ascertained and defined legal rules of right and procedure."

The existence of the rule, as applicable to all kinds of cases, is not, of course, to be confounded with the regulations concerning its application to a given case. The common law rule of evidence and procedure confides to the judge a discretionary authority as to when the rule may be invoked and enforced. In our state no such discretion is extended to the judge in criminal cases; the statute, art. 662, R. S., Code Proc., gives the *right* to either party to invoke the rule. Brown *v*. The State, 3 App., 295.

Whilst it is laid down by text-writers, whose conclusions are well supported by authority, that the enforcement of the rule lies within the discretion of the court, high authority is not wanting to maintain the rule as one which parties are entitled to *demand* the enforcement of. Alderson, B., in Southey *v*. Nash, 7 C. & P., 632 (1 Greenl., § 432, note 1), expressly recognized it as "the *right* of either party, at any moment, to require that the unexamined witnesses shall leave the court."

The manner in which witnesses are to be examined "lies chiefly in the discretion of the judge before whom the cause is tried, it being from its very nature susceptible of but few positive and stringent rules." 1 Greenl. Ev., sec. 431. And it is added, that "whenever any matter is left to the discretion of one judge, his decision is not subject to be reversed or revised by another." Id.

Mr. Greenleaf, in the succeeding section, thus announces the rule: "If the judge deems it essential to the discovery of truth, that the witnesses should be examined out of the hearing of each other, he will so order it. This order, upon the motion or suggestion of either party, is rarely withheld; but, by the weight of authority, the party does not seem entitled to it as a matter of right."

Mr. Phillips, in his work on Evidence, vol. 2, 395, thus

lays down the *rule*, together with the *reason* for it, stating with it the *proper occasion* for its application: "It may in some cases be thought advisable to examine witnesses separately and out of the hearing of each other, with a view to obviate the danger of a concerted story among them, and to prevent the influence which the account given by one may have upon another. For this purpose, the court, on the application of counsel, will order the witnesses on both sides to withdraw."

· As thus laid down by both of these standard authorities, what is called "a *rule*" seems to be intended as such *in fact*, as well as in *name;* a definite regulation prescribed by the law for the conduct of trials — uniform and universal, — to which all parties litigant are entitled, subject to such judicious regulations confided to the judge's discretion as right and justice exact. It is a *rule* for the ascertainment of truth, and the doing of justice, wherever the purposes of both require it; and being a *rule* of law to regulate trials, every citizen, under the constitution and laws of the country, is entitled to its benefits as a part of the law. To capriciously deny it to him to the deprivation of his property, would be to do so without sanction of law — "the law of the land."

"By the law of the land is most clearly intended the general law; a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial. The meaning is, that every citizen shall hold his life, liberty, property and immunities under the protection of *the general rules* which govern society. Everything which may pass under the form of an enactment is not therefore to be considered the law of the land." Dartmouth College *v.* Woodwards, 4 Wheat., 519. "Private rights may be interfered with by either the legislative, executive or *judicial* department." Cooley on Const. Lim., 357. The refusal, in a proper case, to administer to a party the benefits of a rule of law, on

which the security in his rights of property depended, by the court having original jurisdiction, even where a legal discretion was confided to the judge as to when it should be invoked, and the refusal of an appellate court to revise and correct the abuse of such discretion, where it resulted in injury to the party claiming it, in a case where, upon the facts, it is apparent that the protective objects of the rule itself required its application in the case, would amount, in effect, to the substitution of an unregulated, and, as it might be, capricious and despotic, *discretion in name*, but mere personal *will* in fact, for the "law of the land."

Whilst an appellate court will very properly refuse ordinarily to revise the action of an inferior court as to matters which are confided to the discretion of the judge below in the administration of that class of rules which in their nature are not susceptible of being revised so as to determine whether the discretion has been abused or not, yet where that discretion thus confided involves the duty of a court to accord to a party a right necessary to the attainment of justice in determining his right to life, liberty or property, and, as a matter of law, in the given case, it is apparent that the party was entitled to have that discretion exercised in his favor, the reason of the ordinary rule of not revising the action of the court below ceases, and it ought to be revised just the same as any other alleged error.

There is, of necessity, confided to the judge trying a cause discretion over a great variety of subjects which pertain to the progress of the trial, from its beginning to the end; as is to be noticed in respect, for instance, to continuances, amendments of pleadings, pleadings and parties, a variety of matters relating to practice, the examination of witnesses, the granting or refusal of new trials, etc. The principles which have directed the decisions of the supreme court, in passing upon questions involving the

right to revise the exercise of judicial discretion when it has been employed in courts of original jurisdiction, over àll these various subjects, illustrate, we think, abundantly the propositions which we have laid down, and show that the exercise of discretion will always be the subject of revision, where it can be made to appear that it has been abused to the subversion of a rule of law which conferred a right upon the injured party. Very numerous cases might be cited to illustrate this course of decision, but a few instances will serve the purpose, as see Oldham v. Staker, 22 Tex., 200; Brooks v. Howard, 30 Tex., 278; Stanley v. Epperson, 45 Tex., 645; Mays v. Moore, 13 Tex., 85; Hipp v. Hatchett, 4 Tex., 20; Hipp v. Bissell, 3 Tex., 18.

In view of the nature of this suit, and particularly the issue which the contestants' answer presented, there remained no ground on which to question the right of the contestants to have the rule applied which they asked the judge to enforce. It was a clear case for its proper application; and, if it be a rule of law at all to which parties may be entitled, it is impossible to give a sufficient reason to justify the exercise of the judge's discretion against according it, on the request of those who allege in their answer facts which, if true, require its invocation. The record, as it stood before the judge, we think, conclusively determined, as a proposition of law, that his discretion, if invoked, must be exercised in the allowance of the motion.

Justice Wheeler, in discussing the principle of law applicable to the discretion of the district judge in applications for continuance, said: "Our legislature has seen fit to prescribe certain rules applicable to the subject, and it can scarcely be supposed that the discretion of the judge can rise superior to these rules. Such a supposition would elevate judicial discretion above the law of the land. It would make it in effect arbitrary and absolute. Such a principle would be intolerable, and cannot be recognized.

"When there is no rule, or when the rule is inapplicable, or does not afford a perfect guide, then there is room for discretion, and from the necessity of the case it must exist. There may be cases to which no known rules or fixed principles can be applied; and the discretion which must be exercised cannot be the subject of revision. But when there are known rules of action prescribed, there can be nowhere a discretion to dispense with those rules." Hipp v. Bissell, 3 Tex., 21.

Considering the question as to the revision of the judge's discretion, as it was exercised in this case, in the light of the tests afforded by the foregoing terse and comprehensive remarks of Justice Wheeler, it is noticeable that there does not exist, perhaps, in the whole range of subjects for judicial determination, any which present reasons so obvious and appropriate as suits to establish a nuncupative will, for the application of the rule which was asked for. Wills of this kind, by the law, are allowed to exist, on its bare toleration, and under the shadow of its jealousy; and the establishment of them is allowed, subject to exacting restrictions and conditions which correspond in degree with its fears of their dangerous qualities. See Chancellor Kent's remarks in Prince v. Hazleton, 20 Johns., 511. Chief Justice Hemphill, in Mitchell v. Vickers, 20 Tex., 384, said: "Nuncupative wills are not favorites of the law. But as they are authorized by the statute, they must, when duly proved, be allowed and established. They are hedged round with numerous restrictions, to guard against the frauds for which oral wills offer so many facilities; and it is a well established rule, that strict proof is required of all the requisites prescribed by the law"— citing 2 Greenl., 298; 4 Rawle, 46; 20 Johns., 502, and other authorities.

Mr. Chitty, in his note, 2 Bl. Com., 501, says "that, independent of the statute of frauds, the factum of a nuncupative will requires to be proved by evidence more

strict and stringent than that of a written one, in every single particular. The testamentary capacity, and the *animus testandi*, at the time of the alleged nuncupation, must appear by the clearest and most indisputable testimony, and that the proof embodies the *real* testamentary intention of the deceased."

In this case it is shown by the petition that the alleged will was made away from the habitation of the deceased, and that if he was residing, in the sense contemplated by the statute, at the house where he died, and made, as alleged, his will, that he may have been residing among strangers, but for a brief period (not exceeding, at the farthest, according to the evidence, the minimum period within which, under the statute, a nuncupative will would be allowed to be made at the *locus* where it was alleged to have been made). The petition showed that two of the three witnesses required by law to establish the will were the occupants of the house. The answer of the contestants, as has been already stated, charged a fraudulent conspiracy on the part of all of said witnesses, and the sole devisee under the will, to defraud the heirs of the deceased by the fabrication of the will which was sought to be established. Besides the strictness which, as has been seen, the rule of law applies to the subject in order to establish each essential ingredient of a nuncupative will, it was required that the imputed words spoken by the testator should be proven by at least three witnesses; the petition showed that there were not more than three witnesses known to the petitioner who were present at the making of the will, and that those three would be the witnesses who necessarily must be introduced and relied on by the plaintiff; and the answer charged them by identical designation with a fraudulent conspiracy to fabricate testimony. It was necessary, under the rule laid down in Mitchell *v.* Vickers, *supra,* that the testimony of all of those witnesses should agree,

at least substantially, as to the words spoken, or the dispositions made by the deceased.

In such a case, where was room for discretion in determining the question whether those three witnesses ought or not to be permitted to testify on the trial in the hearing of each other ? Recurring to the remarks of Justice Wheeler in Hipp v. Bissell, 3 Tex., 21, and applying the principle which he so clearly propounded, it may with confidence be asserted, that in such state of case as this, the very reason for the rule's existence, and the circumstances which require the judge to apply and enforce it, are both prominently presented, and does "afford a perfect guide" to the judge's discretion; a necessity is exhibited to him under the issues, and the nature of the case itself, for the enforcement of a rule of law which is wisely established to elicit the truth, where the interests of a party who invokes it will probably be imperiled by withholding it. The case before the court is one which must stand or fall upon what shall be determined from the testimony of *each* and *all* of the three witnesses to the will; and, if it be true, as is alleged by the contestants, that *they* have fraudulently combined to fabricate testimony, then, in addition to the reason for enforcing the rule which would exist in an ordinary case of this nature, there would, by the judge's refusal to separate those three witnesses, whilst testifying on the stand, be denied to the contestants the benefit of a rule of law intended for their benefit, most especially, in cases of apprehended danger from conspiracy. It would be in its effect a breach of judicial trust to deny the applicant its benefits, when the rule is invoked under such circumstances.

The other grounds assigned as error will be briefly disposed of. We are of opinion that the petitioner, John M. Holland, is an incompetent witness unless his disqualification shall be removed by a renunciation of his appoint-

ment and right to qualify as executor of the will. His disqualification is determined by the common law rule; and the disability with which he was affected, in naming him as the executor of the will, and thereby giving him an interest in the estate to the extent of commissions and other statutory compensation for services as such, was not removed by the act of May 19, 1871 (Pasch. Dig., 6826), removing the disabilities of witnesses on account of interest, etc. Lewis *v.* Aylott, 45 Tex., 190; 1 Redfield on Wills, 258–260, and authorities there cited.

It is not perceived that there was error in the rejection by the court of the testimony offered by the contestants. We do not think it necessary to notice any of the other grounds assigned as error, in view of the reversal of the judgment and another trial of the cause, and that the petition, as amended, presents substantially a sufficient cause of action, and may, if necessary, be further amended.

We conclude, upon the whole case, that the proper disposition of this appeal is to reverse the judgment and remand the cause for further proceedings.

REVERSED AND REMANDED.

[Opinion delivered November 29, 1881.]