### A. M. INGERSOL ET AL. V. ADA MCWILLIE ET AL.
#### No. 1100.

1. **Evidence—Transaction with Decedent.**—In a contest over the right to administer upon an estate between parties not claiming as heirs, and where a person claiming to be the surviving wife of the decedent has renounced her right to administer in favor of one of the parties to the contest, such wife is not incompetent, under article 2248 of the Revised Statutes, to testify to transactions with and statements by the decedent tending to establish that she was in fact his wife; nor is her competency

affected by the fact that there is another suit pending to establish that she is such surviving wife.

2. **Witness—Impeachment—Chastity.**—Where, in a contest over the right of administration, a witness has testified to confidential declarations of the decedent militating strongly against one of the contestants, she may be asked on cross-examination, to show the proper weight to be given her testimony, if she had not sustained improper sexual relations with the decedent; and objections to her affirmative answer, not urging her privilege to decline answering, but that the answer is immaterial and irrelevant, are not well taken.

3. **Common Law Marriage Valid.**—There can be a valid marriage in this State without compliance with the statutory provisions in regard to the issuance of license and solemnization.

4. **Same—Cohabitation and Agreement.**—A widower, with the consent of a girl's mother, sent the girl to school for the purpose of educating her as his wife, and afterwards, upon an agreement to be then and thereafter husband and wife, they cohabitated together, and he introduced her to some of his friends as his wife, she bearing him a child, and he providing for her support. *Held*, that the marriage should be sustained in favor of the claim of the wife and child in the settlement of his estate.

APPEAL from Grayson. Tried below before Hon. DON A. BLISS.

*W. W. Wilkins, F. W. Stratton, Maughs & Peck*, and *Dillard & Muse*, for appellants.—1. In a contest for administration upon an estate, and where a person claiming to be the wife of the deceased renounces her right to administer in favor of a party to the contest, the wife is incompetent to testify to any transactions with or statements made by the decedent when called to testify by the party in whose favor she has made her renunciation. Parks v. Caudle, 58 Texas, 216; Redding v. Smith, 65 Texas, 26; Simpson v. Brotherton, 62 Texas, 170; Newton v. Newton, 77 Texas, 508; James v. James, 81 Texas, 373; Wooters v. Hale, 83 Texas, 563; Hodde v. Susan, 58 Texas, 392; Bennett v. Cattle Co., 1 Texas Civ. App., 321; Martin v. McAdams, 27 S. W. Rep, 255; Abb. Trial Ev., 63, 64; 1 Whart. on Ev., 473.

2. An agreement to be man and wife, and cohabitation consequent upon such an agreement, and without the formalities of license and ceremony, does not constitute a marriage under the laws of the State of Texas, but in order to constitute a valid marriage between A. R. Collins and Hortense Dix, a license was necessary. Common law marriages are not valid in Texas. Smith v. Smith, 1 Texas, 621; Yates v. Houston, 3 Texas, 433; Primm v. Stewart, 7 Texas, 178; Rice v. Rice, 31 Texas, 177; Carroll v. Carroll, 20 Texas, 741; Hill v. Fairfax, 38 Texas, 220; Lewis v. Ames, 44 Texas, 342; 75 Texas, 656; Tel. Co. v. Proctor, 25 S. W. Rep., 811; Dumas v. State, 14 Texas Crim. App., 466; Livingston v. Williams, 75 Texas, 655.

*Standifer & Eppstein, Hazlewood, Smith & Tolbert*, and *Harris & Knight*, for appellees.—1. This was not an action by or against executors, administrators, guardians, heirs, or legal representatives of A. R. Collins, in which judgment might be rendered for or against them

as such, and therefore not within the rule prescribed in article 2248, Revised Statutes. Roberts v. Yarboro, 41 Texas, 451; Markham v. Caruthers, 47 Texas, 25; Newton v. Newton, 77 Texas, 508; Wooters v. Hale, 19 S. W. Rep., 134; Wallace v. Stephens, 74 Texas, 559; Gilder v. City of Brenham, 67 Texas, 345.

2. A proceeding to secure the appointment of an administrator is not an action or suit inter partes or adversary in character, but is rather a proceeding in rem and administrative in character, and to such a proceeding the statute does not apply. English v. Murray, 13 Texas, 366; Ellis v. Davis, 106 U. S., 485; Gaines v. Fuentes, 92 U. S., 10; Broderick's Will, 21 Wall., 503; Beauregard v. City of New Orleans, 18 How., 497; 39 Cent. Law Jour., p. 400, et seq.; 3 Am. and Eng. Encyc. of Law, 21; 2 Bish. Mar. and Div., sec. 169; 10 Am. and Eng. Encyc. of Law, 324; Williams' Exrs. v. Williams, 13 S. W. Rep., 250–252; Thruston v. Thruston, 59 N. W. Rep., 1017.

3. If this proceeding is in form such an action as is contemplated by article 2248, Revised Statutes, then, in this particular case, it is not an action by or against executors, guardians, heirs, or legal representatives, because the object of the proceeding is to secure the appointment of an administrator, and it therefore can not be a suit against an administrator or other legal representative.

4. No person from, through, or under whom a party to the suit derives his title or interest by assignment or otherwise can be examined in his own behalf or interest, or in behalf of the party succeeding him to his title or interest, if the interest or title thus derived is in the particular claim affected by the transaction or communication. Brown v. Mitchell, 75 Texas, 9; Harris v. Seinsheimer, 67 Texas, 356; Lewis v. Aylott, 45 Texas, 190; Watts v. Holland, 56 Texas, 54; Howard v. Zimpleman (Texas), 14 S. W. Rep., 59; Hodges v. Denny, 86 Ala., 226; same case, 5 South. Rep., 492; Shields v. Smith, 104 N. C., 57; same case, 10 S. E. Rep., 76; Sublitt v. Hodges, 88 Ala., 491; same case, 7 South. Rep., 296; Casey v. Casey, 104 N. C., 171; same case, 10 S. E. Rep., 156; Drew v. Simmons, 58 Ala., 463; Louis v. Easton, 50 Ala., 470; Goodlett v. Kelley, 74 Ala., 213; Duffin v. Hue, 129 Pa. St., 94; same case, 18 Atl. Rep., 566; Youngs v. Cunningham, 57 Mich., 153; same case, 23 N. W. Rep., 626; De Couray v. Johnson, 134 Pa. St., 328; same case, 19 Atl. Rep., 1074; Tunstall v. Withers, 14 Va. Law Jour., 298.

5. It is immaterial, irrelevant, and improper to require a witness to testify to facts or circumstances tending to show that she was a lewd woman. If such testimony is admissible at all, the same should only be admitted as to the general bad character of the witness for chastity in the neighborhood where she lives. 1 Whart. on Ev., sec. 562; Commonwealth v. Billings, 97 Mass., 405; Dimmick v. Downes, 82 Ill., 570; Railway. v. Anthony, 43 Ind., 183; Rev. Stats., arts. 1859, 1863, 2542; Winston v. Masterson (Texas Sup.), 27 S. W. Rep., 768; Potter v. Bank, 102 U. S., 163; Berry v. Sawyer, 19 Fed. Rep., 286.

6. The judgment in this proceeding is not conclusive or admissible for or against Mrs. Hortense Collins in any subsequent proceeding by her or by her child, Gretchen Collins, for the purpose of having set apart to herself or child the exemptions and allowances authorized by law. English v. Murray, 13 Texas, 366; Black on Judg., sec. 548; 2 Rice on Ev., 1224; 1 Woerner on Admin., 338; Ben. Assn. v. Tisdale, 91 U. S., 238; 39 Cent. Law Jour., p. 400; 2 Bish. Mar. and Div., sec. 169; Thruston v. Thruston, 59 N. W. Rep., 1017.

7. The statutes of Texas do not denounce as null marriages not solemnized according to the statutes regulating that subject, and what is known as a common law marriage is valid in Texas. Cumby v. Garland (Texas), 25 S. W. Rep., 673; Simon v. The State (Texas), 20 S. W. Rep., 399; Meister v. Moore, 96 U. S., 82; Hutchens v. Kimmel, 31 Mich., 126; The State v. Bittick (Mo.), 15 S. W. Rep., 325; 14 Am. and Eng. Encyc. of Law, 514, 515, 517; 1 Bish. on Mar. and Div., 283.

8. The appellants can not raise on this appeal any objection to the ruling of the court requiring Lydia Hawley to testify as to her relations with A. R. Collins, except the precise objection taken in the court below, and now presented by them in brief. Ellis v. Garvey, 76 Texas, 371.

9. If it be true that it was error to require Lydia Hawley to testify to facts tending to disgrace her, it was the privilege of the witness that was violated, and this objection not having been taken by the appellants at the time, can not now be raised. 1 Thomp. on Trials, sec. 306; 1 Greenl. on Ev., sec. 451; 3 Rice on Ev., sec. 228.

10. A witness may be compelled to answer any question, however irrelevant to the main fact in issue, and however disgraceful to himself, which tends to shake his credibility. Carroll v. The State, 32 Texas Crim. Rep., 431; 1 Greenl. on Ev., sec. 454, et seq.; 1 Thomp. on Trials, sec. 458, et seq.

LIGHTFOOT, CHIEF JUSTICE.—The statement by appellants is concurred in by appellees, and is adopted, as follows:

"This is a contest over the right to administer upon the estate of A. R. Collins, deceased. The case originated in the County Court of Grayson County, Texas, in February, 1893. A. R. Collins died intestate, at his home in Grayson County. Afterwards C. T. Daugherty was duly appointed by the County Court of Grayson County as administrator of said estate, and as such administrator gave the bond and took the oath required by law. On February 17, 1894, C. T. Daugherty departed this life without having fully administered said estate. After the death of said C. T. Daugherty, Mrs. Ada A. McWillie and N. S. Ernst filed their application in the County Court of said county for letters of administration de bonis non upon the estate of said Collins; and afterwards A. M. Ingersol and B. F. Coleman contested the appointment of Mrs. Ada A. McWillie and N. S. Ernst, and requested that they be appointed. A trial was had in the County Court of

said county, which resulted in the appointment of Mrs. McWillie
and Ernst. From the judgment appointing them administratrix and
administrator of this estate, Ingersol and Coleman appealed to the
District Court of Grayson County. In said last mentioned court the
parties amended their pleadings. The applicants, Mrs. Ada A. Mc-
Willie and N. S. Ernst, after setting out the jurisdictional facts and
the necessity for administration, alleged, that the said decedent left
as his surviving wife Hortense Collins, and also two children, to wit,
Walter Collins, aged 16 years, and Gretchen Collins, aged 18 months.
They also alleged, that they were entitled to letters of administration
upon said estate by reason of the renunciation in their favor of said
Hortense Collins. They also alleged, that they were entitled to admin-
ister by reason of the indorsement and request of many creditors of
said estate. They further alleged, that they were entitled to admin-
ister upon said estate by reason of the renunciation in their favor of
Mrs. Lucy Wilder, who resides in the county of Tennessee, State of
New York, who was the aunt and next of kin of the said A. R. Collins,
deceased, after the said Hortense Collins, Walter Collins, and Gretchen
Collins; and they also alleged, that N. S. Ernst was a creditor of said
estate, and that his coapplicant, Ada A. McWillie, is a cousin of said
Collins, and the next of kin to him residing in the State of Texas, after
the said Hortense, Walter, and Gretchen Collins.

"The amended application of the said A. M. Ingersol alleged, that
he was the first cousin of the said A. R. Collins, deceased, and that he
was a citizen of Grayson County, Texas, and that he was no way dis-
qualified to act as such administrator; that the applicant, Ada A. Mc-
Willie, was a married woman, and only a second cousin of said A. R.
Collins, deceased; that the said Hortense Collins was not the surviving
wife of said A. R. Collins, as claimed by her; that she already had a
suit pending in the District Court against the estate of A. R. Collins,
whereby she seeks to establish the fact that she is such surviving wife.
After alleging other facts not necessary to be stated here, said Ingersol
alleged, that if he was not entitled to administer alone or with another,
then he averred that B. F. Coleman was a suitable person to adminis-
ter upon said estate, and waived his right to administer in favor of
said Coleman.

"The amended protest and application of B. F. Coleman alleged,
that he resided in Grayson County, and that he was not disqualified
by law from having letters of administration granted him upon said
estate; that at the time of his death the said Collins was an unmarried
man, and did not leave surviving him any father or mother, and that
the sole surviving next of kin of said Collins was Walter D. Collins,
who was about 17 years of age, and who resided in Grayson County,
Texas, and who was a son of said decedent; that the said Walter D.
Collins, by power of attorney duly authenticated and filed, renounced
any right he might have to administer upon said estate in favor of the
applicant B. F. Coleman, and that said said Walter D. Collins would

renounce any right he might have to such appointment in open court in favor of Coleman; that M. A. Daugherty, who resides in McLennan County, Texas, is the duly appointed and qualified guardian of the person and estate of said Walter D. Collins, and that the said Daugherty will in open court renounce his right to be appointed administrator of said estate in favor of the applicant Coleman; that excluding from consideration the said Walter D. Collins, the following persons are the next of kin of the said A. R. Collins, deceased, to wit, William W. Collins, who resides in Calhoun County, Michigan, and S. A. Collins, who resides in Jackson County, Michigan, both of whom are uncles by blood of the said A. R. Collins, deceased, and both of whom by power of attorney, duly authenticated, have renounced any right they may have to administer upon said estate in favor of applicant Coleman; that excluding from consideration the son and two uncles above named, the following are the next of kin of the said A. R. Collins, deceased, to wit, Addison C. Collins, W. B. Collins, Charles E. Collins, Cynthia W. Wallace, and Ida Palmer, each and all of whom reside in Westenaw County, Michigan; that the five persons last named were each first cousins by blood of the said decedent, and that each and all of said five cousins, by powers of attorney duly authenticated and filed herein, have renounced any right that they and each of them may have to administer upon said estate in favor of the applicant Coleman. And said B. F. Coleman alleged, that a large number of the creditors of said estate desired and requested his appointment as such administrator. The said B. F. Coleman also represented, that at the time of his death the said A. R. Collins left surviving him no wife; that the person named in the application of N. S. Ernst and Ada McWillie as the wife of A. R. Collins, to wit, Mrs. Hortense Dix Collins, was not in fact and in truth the surviving wife of said decedent; that after the death of said A. R. Collins, and after the appointment of said C. T Daugherty, the child of the said Hortense Dix Collins, through its next friend, A. G. Moseley, made an application to the County Court of Grayson County for an allowance of $5000 in lieu of a homestead, and also an allowance for one year's support and maintenance, and for an allowance of articles of exempt property not found in kind amongst the property of said estate; that upon the hearing of said application the said County Court adjudged and decreed that the child of Hortense Dix Collins and the said Hortense Dix Collins were entitled to an allowance of the character and nature above named to the amount of $6125; that after the rendition of said judgment, the administrator of said estate, Daugherty, appealed from such judgment in the manner provided by law, and that such appeal is now pending in this court; that, while ostensibly the said Hortense Dix Collins is not a party to the said last named suit, and is not by name a party to this suit, yet in truth she is a party to the issues joined, as well in this suit as the one just mentioned; that the said N. S. Ernst and Ada A. McWillie are seeking to be appointed administrator and administratrix upon the re-

nunciation in their favor by the said so-called Hortense Dix Collins, and also upon the application of the said Ada A. McWillie, as next of kin to the said A. R. Collins, deceased, when in fact and in truth the said Ada A. McWillie is only a second cousin of said decedent. The prayer of the contestant and applicant B. F. Coleman was that letters of administration de bonis non be not granted to said Ada A. McWillie and N. S. Ernst, but that he be appointed as such administrator, and for all equitable, general, and special relief."

In the District Court the appeals of B. F. Coleman and A. M. Ingersol were consolidated, upon motion of Ingersol. The consolidated causes were tried in the District Court of Grayson County on May 10, 1894, and resulted in a verdict and judgment in favor of Mrs. Ada A. McWillie and N. S. Ernst, from which this appeal is taken.

*Opinion.*—1. There was much controversy in the testimony, but from the verdict of the jury and the judgment thereon, the conclusion is established, that Hortense Dix was educated by A. R. Collins, by the consent of her mother, with the view of making her his wife. That after she finished her education, he actually entered into the marriage state with her, each mutually agreeing that they would then and thenceforward be husband and wife, and upon the faith of such mutual agreement and promise, they then cohabited and lived together as such husband and wife, and so continued, and that said A. R. Collins, after such agreement and cohabitation, recognized said Hortense as his wife, and introduced her to his friends as such, and such relation continued until his death; and that at the time of his death, in February, 1893, he left her as his surviving widow. She renounced her right to administer on said estate to appellees.

The first assignment of error is as follows: "The court erred in permitting the witness Hortense Dix Collins, over the objections of contestants, B. F. Coleman and A. M. Ingersol, to testify to the fact of the so-called marriage between herself and A. R. Collins, deceased, which testimony is fully set forth in contestants' bill of exceptions number 1, for the reason: (1) That the said witness, in the light of her testimony, was the wife and heir at law of A. R. Collins, deceased, and she was incompetent to testify to such fact, and was incompetent to testify to any transaction with A. R. Collins, or any statement made by him, by reason of the inhibition contained in article 2248 of the Revised Statutes of the State of Texas, all of which fully appears by reference to said bill of exceptions number 1. (2) Such witness was incompetent to testify to the facts set forth in said bill of exceptions number 1, for the reason that there was another suit pending in this court to establish the fact that she, the witness, Hortense Dix Collins, was the surviving wife of A. R. Collins, deceased, all of which is fully set forth in said bill of exceptions number 1." The court did not err in admitting the testimony of Hortense Dix Collins to prove the marriage.

Under Revised Statutes, article 2246, it is provided, that no person shall be incompetent to testify because a party to the suit or interested in the issue to be tried. Under article 2248: "In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with or state-ment by the testator, intestate, or ward;" and the provisions of the article are extended to the heirs or legal representatives.

This is not an action by or against executors, administrators, guard-ians, heirs, or legal representatives, *"in which judgment may be ren-dered for or against them as such."* It is a contest among certain parties, who do not claim to be heirs, for letters of administration upon the estate of A. R. Collins, deceased. Whatever judgment might be rendered in the case would not be for or against either party in any relation which he sustained at the time such testimony was introduced— as executor, administrator, guardian, heir, or legal representative— although such trust relation might be created by the judgment to be rendered. In so far as the witness is concerned, any right which she might have to administer upon the estate would grow out of her rela-tion to the deceased as "surviving wife," and not as an heir. This right would exist even if all the estate was the separate property of the husband, and he had willed the whole of it to other parties, with-out naming an executor. Rev. Stats., art. 1861.

It has been held by our Supreme Court, that the terms of the statute will not be extended so as to embrace those not especially mentioned therein. In the case of Newton v. Newton, 77 Texas, 508, it was held by Judge Gaines, that the provisions of article 2248 could not be ex-tended so as to embrace *legatees* or *devisees.* The court says: "This court has held that the exceptions could not be extended by implica-tion to a class of persons not named, although the reason for embrac-ing them was equally as strong as those which existed for including the persons expressly designated. Roberts v. Yarboro, 41 Texas, 451; Markham v. Caruthers, 47 Texas, 25."

This statutory proceeding for the appointment of an administrator de bonis non is not strictly an action inter partes, in which adverse interests are so put in issue that any judgment can be rendered for or against the representative of the estate, as such; but it is a proceeding to place a proper party at the head of the administration. Whatever might be the result, no judgment can be rendered in this case against the administrator, as such, or against an heir or legal representative, as such. In the appointment of an administrator, the court considers, first, "the surviving husband or wife," as such; second, "the nearest of kin"—without regard to whether they are heirs or not, and without regard to any interest they may have in the estate. The result would be the same if the next of kin competent to administer were not the heirs, or if every vestige of property had been willed to some charita-ble institution without naming an executor. Wallace v. Stephens, 74

Texas, 559; Wooters v. Hale, 63 Texas, 564; Potter v. Bank, 102 U. S., 163; Berry v. Sawyer, 19 Fed. Rep., 286.

In the recent case of Martin v. McAdams, 87 Texas, 225, our Supreme Court holds, that a contest for the probate of a will is such an action as comes within the terms of the statute, and that one of the children of the devisor, a party to the proceedings, and a devisee under the will, is a competent witness to prove his handwriting in the will, and can not be excluded under article 2248; but the ruling of the court is placed upon the ground that such testimony is not of a transaction with or statement by the testator.

We do not think that any judgment rendered in this case could be used to establish any fact beyond that embraced in the direct result. In the case of English v. Murray, 13 Texas, 367, Judge Hemphill says: "Letters of administration are conclusive that the person therein appointed is such. 2 Phillips, p. 29. But the decree granting the letters is one which does not arise out of an adverse suit between parties, and, in the language of the books, there is no reason for allowing it any further effect than that of establishing the rights and liabilities incident to the estate and legal character of the grantee, as administrator."

Hortense Dix Collins is not a party to the suit, and while one of the contesting parties may claim the right to administer by reason of the fact that she has renounced her right, as "surviving wife," to administer, it would be extending the rule further than the Legislature authorized it to exclude her testimony on that ground. Not being a party to the suit, she is not disqualified by reason of interest in the subject. Gilder v. City of Brenham, 67 Texas, 349.

The second ground of objection, that the witness could not testify, because there was another suit pending to establish that she was the surviving wife, is wholly without merit. The competency of the testimony must be determined with reference to this suit, and we have no concern here with any other case in which the question may be involved.

2. The second assignment of error is as follows: "The court erred in permitting the applicants to go into the character of the witness Lydia Hawley for chastity, for the reasons set forth in the contestants' bill of exceptions number 2."

This witness had already shown, by her testimony, that she lived intimately with A. R. Collins on his farm, traveled with him, stopped at hotels with him, received letters from him almost daily during his absence, some of which were of a nature indicating more than business or friendship. She also testified, that she was in the room with him sometime before his death, and had conversations with him of a confidential nature concerning his relations with Hortense and her children, and told witness that said Hortense was not his wife. Upon cross-examination of the witness Lydia Hawley, the appellees sought to show by questions propounded to said witness that she, the witness, was not a

chaste woman, and the following questions were propounded to her: Whether she had sustained improper relations with the deceased, A. R. Collins; to which the witness replied, after appealing to the court to ascertain whether she must answer such question, and the court having required her to answer it, that she had sustained improper relations with the deceased, A. R. Collins, and that such intimacy began in 1889, and continued up to the death of said Collins. She was also asked whether she had not visited a house of prostitution in the city of Denison, kept by one Dora Cheever, to which the witness replied she had not, except a short time before December 25th last, when she went there in order to have some sewing done; and certain other questions were propounded to said witness in order to show that she had been intimate with other persons. To the propounding of such questions, and the introduction of such testimony the contestants Coleman and Ingersol objected, because irrelevant and immaterial, and because if such testimony was proper at all, it would only be legitimate to show the general bad character of the witness for chastity in the neighborhood where she lived.

The questions in regard to the visit to the house of Dora Cheever were answered, it seems, without hesitation, and indicated that it was for a lawful purpose. The testimony of the witness had already shown relations towards A. R. Collins which were more than friendly, during the time of the claimed marriage relation between him and Hortense Dix Collins. Her testimony was largely of declarations of Collins, which it was claimed were communicated to the witness in the closest confidence in his own private apartments and in the fullest detail, concerning his domestic affairs, and especially concerning his relations towards Hortense Dix Collins, when there was no one else present. Under the circumstances, the court did not err in allowing appellees to ask her on cross-examination, "whether she had sustained improper relations with A. R. Collins." Her own testimony had already gone almost that far, and under the liberal rule allowed in cross-examination, it was proper to fully test her evidence by showing the relation she bore towards Collins and towards Hortense. Her motives, her feelings, her relations towards the parties, were not improper subjects of inquiry, in getting at the proper weight to be given to her testimony. Carroll v. The State, 24 S. W. Rep., 100; Exon's case, 26 S. W. Rep., 1088; 1 Greenl. on Ev., 459, 460.

None of the testimony elicited from the witness was prejudicial to her, except that which refers to her relations with Collins, which was competent. The grounds of the objection, as shown by the bill of exceptions, are not that the privileges of the witness was in any way violated, but that the testimony was immaterial and irrelevant. It was both material and relevant, in that it tended to show the proper weight which the jury should give to her testimony.

Mr. Thompson in his work on Trials, volume 1, section 450, says: "It is one of the objects of a cross-examination to discover the

motives, inclinations, and prejudices of the witness, for the purpose of reducing the effect which might otherwise be given to his evidence. Accordingly, it has been well said, that 'it is always competent to show the relations which exist between the witness and the party against as well as for whom he was called.' The general rule is, that anything tending to show bias or prejudice on the part of a witness may be brought out on his cross-examination. The reason for this rule is, that such matters affect the credit of the witness, and it is therefore material to indulge in such an inquiry. For this purpose it is competent to inquire of the witness concerning his acts, declarations, and circumstances, showing the existence of hostile feelings or prejudice; and the latitude of cross-examination is not restricted by the fact that the witness is a party testifying in his own behalf. The state of mind and feelings of a witness may materially affect his testimony, and the credit of a witness upon whose testimony in part the issue is to be determined, is not a collateral and immaterial matter."

In Exon's case, referred to above, the wife of the defendant, who was the mother of the prosecuting witness, was offered by the defendant as a witness to impeach her daughter, and the prosecuting attorney, on cross-examination, asked the witness "whether she had ever lived with defendant as his mistress before marriage?" Over objection by defendant's counsel, the trial court permitted the witness to answer the question. Judge Simkins, on this question, says: "We think the court did not err. The evidence went to the character and credibility of the witness." The court makes an elaborate review of the authorities on this subject in the Carroll case, and holds such testimony on cross-examination admissible, because "it is of the highest importance that they, whom the law makes the exclusive judges of the facts and the credibility of the witnesses, should know how far the witness is to be trusted. They ought to know his surroundings and status, so as not to give to one belonging to the criminal class the same credit as he whose character is irreproachable."

In this case the witness Lydia Hawley had testified to her intimacy with the decedent in regard to the very subject of inquiry here, and it was highly important to know how far that intimacy extended. If she was a pure, good woman, herself free from any improper connection with the parties to the transaction, great weight might be attached to her testimony. On the other hand, if she was unchaste and impure, and covering a period of inquiry was occupying a relation of concubinage with the husband, her testimony regarding the wife could not be looked to with so much respect and confidence. The testimony was admissible.

3. The assignments of error in regard to the marriage are quite numerous, but we deem it unnecessary to consider them in detail, as they all raise the question whether there can be a valid marriage in this State without compliance with the statutory provisions in regard to the issuance of license and solemnization.

It was fully shown in this case that A. R. Collins, being a single man, after obtaining the consent of the mother of Hortense Dix, said Hortense then being a girl under her mother's care, sent her to school for the purpose of educating her as his wife, and after her education did agree with her to enter into the marriage state, and that such marriage was consummated by cohabitation, each party then agreeing and consenting at that very time to be husband and wife.

There is much to be said on both sides of the question. On the one side, of the holiness and sanctity of the marriage relation, and that it should be upheld in its purity, and the statute laws in regard to it strictly enforced. On the other side, of the marriage status itself, dependent upon the mutual covenant of the parties and the relation assumed by them, not dependent wholly upon a contract, but upon the status of marriage, which they have reached, using the contract as the threshold over which they have reached that status. Our statutes provide, that certain ministers and officers shall be authorized to solemnize the rites of matrimony, that license shall issue, that such license shall be returned and recorded, and prohibitions are placed upon marriages in certain degrees of relationship, and between certain nationalities. Rev. Stats., arts. 2838–2843. The statutes also legalize certain marriages which have heretofore taken place by other methods. Id., arts. 2844, 2846. There is no statute declaring that marriages which shall be entered into by any other method than that named in the statute shall be null and void. In order to make a proper *legal marriage*, all the requisites of the law should be followed. It is said by a learned text writer, that "a marriage, if legal, must be valid, but a valid marriage may be illegal." Stewart on Mar. and Div., sec. 5.

In the case of Hutchins v. Kimmell, 31 Michigan, 130, Judge Cooley says: "Whatever be the form of the ceremony, or if *there be no ceremony*, if the parties agree presently to take each other for husband and wife, and from that time on live professedly in that relation, proof of these facts would be sufficient to constitute proof of a marriage binding on the parties, which would subject them to legal penalties for a disregard of its obligations. * * * This has been the settled doctrine of the American courts, and the few cases of apparent dissent are borne down by the great weight of authority in favor of the rule stated." He cites in support of this conclusion a great number of authorities.

In the case of Meister v. Moore, 96 United States, 80, 81, the Supreme Court of the United States reviews the authorities in full, refers with approval to the above opinion of Mr. Cooley, and further says: "We will not undertake to cite those which hold a different doctrine, one in accord with the opinion we have cited from 1 Gray. Reference is made to them in Bishop on Marriage and Divorce, section 283, et seq.; in Reeve's Domestic Relations, 199, 200; in 2 Kent's Commentaries, 90, 91, and in 2 Greenleaf on Evidence. The rule deduced by all these writers from the decided cases is thus stated by Mr. Greenleaf: 'Though in most, if not all, the United States there are statutes regulating the cele-

bration of marriage rites, and inflicting penalties on all who disobey the regulations, yet it is generally considered, that in the absence of any positive statute declaring that all marriages not celebrated in the prescribed manner shall be void, or that none but certain magistrates or ministers shall solemnize a marriage, any marriage, regularly made according to the common law, without observing the statute regulations, would still be a valid marriage.'

"As before remarked, the statutes are held merely directory; because marriage is a thing of common right, because it is the policy of the State to encourage it, and because, as has sometimes been said, any other construction would compel holding illegitimate the offspring of many parents conscious of no violation of law."

So much has been written upon this important subject that we deem it unnecessary to go further into the authorities outside of our own State. A careful examination of our statutes will show that they are not more stringent than others in which the above doctrine has been so clearly announced by the most eminent judges and text writers. Our decisions have usually been broad and liberal upon the subject, and are in harmony with the rule that a marriage may be valid and binding upon the parties, although entered into not in accordance with the terms of the statute requiring license and solemnization by a minister or officer. The question is ably discussed by Judge Williams in the case of Cumby v. Garland, 25 Southwestern Reporter, 675; also by Judge Simkins in Simon v. The State, 20 Southwestern Reporter, 399, in which they each reach this conclusion. See also Shreck v. Shreck, 32 Texas, 589; The State v. Bittick (Mo.), 15 S. W. Rep., 325; Bishop on Mar. and Div., 283, et seq.; Stewart on Mar. and Div., secs. 106–108. There is an able opinion by Judge Stephens in Telephone Company v. Proctor, 25 Southwestern Reporter, 812, in which he takes the position, that while the above is the prevailing American doctrine, it is not good law in this State. See also, in support of Judge Stephens' opinion, the authorities there cited—especially Dumas v. The State, 14 Texas Criminal Appeals, 472.

In the case of Nixon v. Land and Cattle Company, 84 Texas, 411, Judge Gaines makes the following quotation and comment: " 'Every intendment of law is in favor of matrimony. When a marriage has been shown in evidence, whether regular or irregular, and whatever the form of the proofs, the law raises a presumption of its legality, not only casting the burden of the proof upon the party objecting, but requiring him throughout and in every particular plainly to make the fact appear, against the constant pressure of this presumption, that it is illegal and void. The strength of the presumption increases with the lapse of time through which the parties are cohabiting as husband and wife. It being for the highest good of the parties, of the children, and of the community, that all intercourse between the sexes in form matrimonial should be such in fact, the law when administered by enlightened judges seizes upon all probabilities and presses into its serv-

ice all things else which can help it in each particular case to sustain the marriage and repel the conclusion of unlawful commerce.' 1 Bish. on Mar. and Div., 6 ed., sec. 459. Such is the emphatic language of an able and discriminating commentator. The decisions of our courts are to the same effect, and some of the cases are strikingly in point. Carroll v. Carroll, 20 Texas, 732; Lockhart v. White, 18 Texas, 102; Yates v. Houston, 3 Texas, 433."

In the case of Sapp v. Newson, 27 Texas, 540, where there was a marriage by bond, at a time when the country was under Mexican law, which required that a marriage, to be legal, must be celebrated according to the rites, usages, and ceremonies of the Catholic church, Judge Bell, in sustaining the bond marriage as valid, said: "We think it the duty of the courts, upon the highest considerations of public policy, to hold that the marriages contracted in these times should be regarded as mere civil contracts, and should be sustained as valid, whenever the consent of the parties, and the intention to enter into the state of matrimony, and to assume its duties and obligations, is clearly shown." See Smith v. Smith, 1 Texas, 621; Rice v. Rice, 31 Texas, 178; Lewis v. Ames, 44 Texas, 342; Carroll v. Carroll, 20 Texas, 731.

Of course, no such excuse can be shown now for a failure to observe all the rules and regulations prescribed by law and sanctioned by an enlightened people and christian civilization, but the policy of the law in protecting parties who have innocently been led into such a marriage, is the same. From the testimony in this case, we think there can be no doubt that Hortense Dix, an inexperienced and confiding girl, just from school, and who had a right to look to A. R. Collins as a protector, was induced to enter with him into the marriage state, under the agreement of present marriage, he giving some business complications as an excuse for not making it public by license and public ceremony. They lived and cohabited as husband and wife, and he introduced her to his friends as his wife, thereby admitting the marriage. She bore him a child as his wife. While living he did not repudiate the relation. Since his death, we think that public policy, as well as common justice and humanity, demand that the marriage should be sustained, and her rights as survivor protected.

Hortense Dix Collins being the surviving wife of decedent, and having renounced her right to administer to appellees—one a relative of decedent, and the other a creditor, and both being competent and suitable persons, we find no reason for disturbing the judgment of the court below, and it is affirmed.

*Affirmed.*

Delivered January 23, 1895.

Writ of error refused by Supreme Court. See 87 Texas, 647.