LEAHY et al. v. TIMON et al.    (No. 6051.)

(Court of Civil Appeals of Texas. San Antonio. June 5, 1918. On Motion for Rehearing, July 1, 1918.)

1. WITNESSES ⊕═139(1) — TRANSACTIONS WITH DECEDENT—WILL CONTEST.

In a will contest, testimony by a contestant concerning statements by or transactions with the testator is not admissible over objection based on Rev. St. 1911, art. 3690.

2. TRIAL ⊕═260(5)—INSTRUCTIONS—COVERED BY OTHER INSTRUCTIONS.

Where, in a will contest, the court, in addition to giving in its main charge a definition of mental capacity which was not objected to, gave a special charge for plaintiffs, again explaining the meaning of mental capacity, it properly refused an additional charge for plaintiffs on mental capacity, even though correct as an abstract legal proposition, since giving it would have unduly emphasized the issue.

3. JURY ⊕═72(1)—COMPLETING PANEL.

Where sheriff's return shows that, although he served some of the jurors selected by the jury commissioners for a certain week of court, he did not serve the remainder, because "not found after due diligence and search," the court, at the beginning of such week, on finding that a sufficient number of jurors are not in attendance, is not required to try the question of the diligence of the sheriff before causing sufficient jurors to be summoned to make up a suitable panel for the week, but, to proceed with the dispatch of business, may complete his panel as provided by Rev. St. 1911, arts. 5167, 5168, regardless of the reasons for the absence of jurors selected by jury commissioners.

4. JURY ⊕═82(2)—OBJECTIONS.

Objections to sheriff's return of service of jurors selected by jury commissioners, as not stating facts showing diligence, or reasons why certain jurors were not summoned, should be made in time to invoke the court's action, when

---

⊕═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

it would not require discharge of a portion of a panel from which cases have been tried.

### On Motion for Rehearing.

**5. WILLS ⊕=>163(1)—CONTEST — BURDEN OF PROOF.**

Notwithstanding suspicious circumstances as to the making of a will, such as that the chief beneficiary wrote the will and maintained secrecy as to its execution and existence until after testator's death, the burden of the whole case remains upon contestants as to fraud and undue influence.

**6. WILLS ⊕=>164(5) — TESTAMENTARY CAPACITY—ADVICE.**

Where a will is plain, and testator is capable of fully understanding it, and either carefully reads it or has it correctly read to him, that the beneficiaries or beneficiary fail to advise him fully as to claims of others is immaterial.

**7. APPEAL AND ERROR ⊕=>994(2)—REVIEW—CREDIBILITY OF WITNESSES.**

Appellants cannot contend that the appellate court is authorized to discredit the testimony of an adverse party, whom they placed on the stand and whom the jury believed.

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Suit by Cecelia Leahy and others against Walter F. Timon and others. From judgment for defendants, plaintiffs appeal. Affirmed.

D. McNeill Turner, of Denver, Colo., John C. Scott, of Corpus Christi, and Beasley & Beasley, of Beeville, for appellants. Kleberg & Stayton, G. R. Scott, and Boone & Pope, all of Corpus Christi, Dougherty & Dougherty, of Beeville, and C. M. Pollard, of Houston, for appellees.

MOURSUND, J. This suit is one by Cecelia Leahy, joined by her husband, Phillip Leahy, and Laura Dolan, daughters of Mrs. Ellen Timon, deceased, and Mary Ellen Ellis, joined by her husband, C. C. Ellis, Ann Arabella Blair, joined by her husband, Sam Blair, John Henry Timon, Amos Cecil Timon, Walter Lee Timon, Augusta Margaret Timon, Edward Beasley Timon, a minor, who sued by his mother, Agnes Timon, as next friend, who are the children of John W. Timon, the deceased son of Mrs. Ellen Timon, against Walter F. Timon, E. C. Timon, H. J. Timon, and Lizzie J. Barry, children of said Mrs. Ellen Timon, and Harry T. Dolan, a minor grandson of Mrs. Ellen Timon, to contest the validity of a paper purporting to be the will of said Mrs. Ellen Timon, dated January 17, 1912, and also its probate in the county court of Nueces county under a decree rendered February 4, 1915. The grounds alleged were that at the date of such instrument Mrs. Timon was without testamentary capacity, and that such instrument was the product of fraud perpetrated on her by defendant Walter F. Timon, and of undue influence exercised over her by him. During the pendency of the suit, Edward Beasley Timon reached his majority, and thereafter prosecuted the suit in his own name. The suit was filed in the county court of Nueces county on March 16, 1915. Claude Pollard was appointed guardian ad litem for the minor, Harry Timon Dolan. Judgment was rendered in the county court in favor of defendants, and, upon appeal to the district court, a general verdict was returned by the jury in favor of defendants, upon which judgment was entered, reaffirming the validity of the will and its probate, and adjudging the costs, including a fee of $1,000 for Claude Pollard, against the plaintiffs. Plaintiffs appealed.

Under the instrument an estate of about a half million dollars was devised, one-third to one-half thereof to Walter F. Timon, property worth about $20,000 to Harry T. Dolan, the minor son of plaintiff Laura Dolan, and to each of the other three defendants a substantial portion; no effort being made to provide uniformity in value as to any of the beneficiaries. The plaintiffs were entirely pretermitted. Walter F. Timon was appointed independent executor, trustee to hold and manage the property devised to Harry T. Dolan, and it was further provided that the bequests be divided and apportioned among the devisees by the executor in such manner and form as to him might seem proper. A vast amount of testimony was adduced, the statement of facts containing 900 pages.

In the charge of the court the issues of mental capacity, undue influence, and whether Mrs. Timon executed the instrument were specifically submitted, and reference made to the issue of fraud. At plaintiffs' request the court gave special charges drawn by plaintiffs submitting each of the following issues: (1) Fraud; (2) mental capacity; (3) whether the instrument signed by Mrs. Timon had been altered after she signed it; (4) whether Mrs. Timon knew and understood the contents of the instrument at the time she signed it; (5) undue influence. By its general verdict for defendants the jury found in their favor as to each issue submitted. We conclude that the evidence is sufficient, as to each of such issues, to support the verdict of the jury. We conclude, further, that the testimony is not of such character, as to any material issue, as would justify this court in exercising the power, conferred upon it, to set aside a verdict on the ground that it is so contrary to the preponderance of the testimony as to show that manifest injustice has been done. The evidence is discussed at length and with much ability in both briefs, which also disclose an exhaustive investigation of authorities for the purpose of supporting the contentions made with respect to the weight to be given to certain facts. Were we to attempt to follow the discussion, this opinion would be indeed lengthy, and no useful purpose would be subserved thereby.

[1] Assignments 7 to 13, inclusive, and 16 and 17, complain of the refusal to permit

---

⊕=>For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Cecelia Leahy, one of the plaintiffs, to testify to certain statements made by Mrs. Timon to her. By the fifteenth assignment complaint is made because the court, on motion of defendants, struck from the evidence and instructed the jury not to consider testimony of Mrs. Leahy relating to a transaction between her and Mrs. Timon. While some portions of the testimony to which the assignments relate might not be material, there is sufficient thereof material to require a reversal of the judgment, if testimony of this character is admissible in cases of this kind. We conclude, however, that, under the decisions of our Supreme Court, the testimony of Mrs. Leahy, a party to the suit, concerning statements by or transactions with Mrs. Ellen Timon, was not admissible over the objection that it was inhibited by article 3690, R. S. 1911. Brown v. Mitchell, 75 Tex. 9, 12 S. W. 606; Sanders v. Kirbie, 94 Tex. 564, 63 S. W. 627; Lewis v. Aylott, 45 Tex. 190; McCampbell v. Henderson, 50 Tex. 602; Parks v. Caudle, 58 Tex. 216; Reddin v. Smith, 65 Tex. 26; Ross v. Kell, 159 S. W. 120; Clark v. Briley, 193 S. W. 422.

This case cannot be distinguished from the case of Brown v. Mitchell, supra, and if article 3690 applies to any case involving the probate or validity of a will it appears that it would apply to this case, for it is one by pretermitted heirs against the devisees and executor named in the will. That the statute has application to some cases involving the probate of wills is expressly stated or taken for granted in the cases of Gamble v. Butchee, 87 Tex. 643, 30 S. W. 861; Martin v. McAdams, 87 Tex. 225, 27 S. W. 255, and Ingersol v. McWillie, 9 Tex. Civ. App. 543, 30 S. W. 56, and 87 Tex. 647, 30 S. W. 869. If it be held not to apply in a will contest case, it can only be upon the ground that the suit is not between parties such as are described in the article, or on the ground that the language of the last portion of the article descriptive of the suits to which the provisions of the first part have been extended is not broad enough to include the particular contest. In the early case of Parks v. Caudle, above cited, our Supreme Court held, in a suit by heirs against heirs, and therefore coming within the latter portion of said article, that the testimony inhibited by the first portion thereof was not merely statements by the deceased to the witness, or transactions between the deceased and witness, but also statements to or transactions between deceased and third persons, and that, too, occurring when the witness had no interest therein. It also held that the expression "transaction with such decedent," found only in the latter portion of said article, is broad enough to include the execution of a deed by the decedent to one whose heirs are claiming under it. The statute was also applied in the case of Reddin v. Smith, supra, which also may be said to have arisen out of transac-

tions by the decedents with others than those who were parties to the suit.

These cases were decided by the court while Judge Stayton, who wrote the opinion in Brown v. Mitchell, was a member thereof. The decision in the last-mentioned case, it appears, is in harmony with the earlier decisions. It is suggested, however, that later decisions of the Supreme Court modify the holding in Brown v. Mitchell. The case of Martin v. McAdams, supra, is especially relied on. It appears that certain reasoning adopted from a Kentucky case not available to us, and used for the purpose of illustrating the rule of construction as to what is a transaction, if such reasoning is followed to its logical conclusion, would limit the application of the statute to suits the purpose of which is to take away funds or property from the estate of a deceased person, and to deny its application to suits involving the rights of heirs to the estate. To give such a broad effect to the language would be to deny the purpose of the statute, as stated by the same great judge in writing the opinion for the court in the case of Moores v. Wills, 69 Tex. 109, 5 S. W. 675, and stated by our courts in other cases. As two members of the court participated in the decision of the case of Brown v. Mitchell, and no comment is made with regard to such case, it cannot be presumed that the court intended to announce a rule in conflict therewith. It is also evident that, if the court had been of the opinion that the statute only applied to suits the purpose of which was to deplete the estate, it would hardly have gone to so much trouble to discuss the particular evidence, and hold that the statute did not apply to such evidence.

It is also made a matter of comment that the Supreme Court, in the case of Sanders v. Kirbie, 94 Tex. 564, 63 S. W. 626, based its decision upon the assumption that the statute applied to that case, which assumption had been made by the Court of Civil Appeals in its certified question. It is true the court refrained from committing itself, but whether because it was unnecessary to do so, or because the suit was one in which all parties were legatees or devisees, and therefore not based on the identical facts shown in the case of Brown v. Mitchell, is a matter of surmise and conjecture. There can be no question in this case that the suit is by persons such as are specifically named in the statute, and we will therefore not discuss the question of persons.

Recurring to the question whether the case falls within those covered by the statute, it must be admitted that appellants' theory is supported by authorities from other states and by statements contained in some of our decisions; also that the question is one upon which there is room for a difference of opinion. It is stated in the case of Parks v. Caudle that it was believed the codifiers, in add-

ing the last portion of the article, did so for the purpose of incorporating into the statute the decisions of Lewis v. Aylott, 45 Tex. 202, and McCampbell v. Henderson, 50 Tex. 602. If they intended to incorporate only cases identical in the facts with such cases, the statute, in so far as it relates to suits by or against heirs or legal representatives, would apply only when the suit arose out of a transaction by parties to the suit with decedent. But the court did not adopt this strict construction in deciding the cases of Parks v. Caudle and Brown v. Mitchell. As before stated, the case of Brown v. Mitchell is controlling, being practically identical as to facts with this case, and we find no ground for believing that it will be overruled by the Supreme Court, especially after it has received legislative sanction by re-enactment of the statute without change of verbiage. The Supreme Court has not, as far as we have been able to ascertain, been called upon to again pass upon the direct question. It referred the application for writ of error in the Clark v. Briley Case, hereinbefore cited, to the Committee of Judges of the Courts of Civil Appeals, who refused such application. Appellees call attention to the fact that in the application in said case, and also that filed in the case of Ross v. Kell, 159 S. W. 120, a conflict was alleged between said decisions and the case of Simon v. Middleton, 51 Tex. Civ. App. 531, 112 S. W. 441, and that by referring the application in the one and dismissing that in the other the court decided there was no conflict. The assignments are all overruled.

[2] There is no merit in the fourteenth assignment. The court, in addition to defining mental capacity in the main charge, which definition was not objected to, gave plaintiffs' special charge No. 2, which again explained to the jury what was meant by mental capacity. Plaintiffs were not entitled to an additional charge on mental capacity, even though it be conceded to state a correct abstract proposition of law. To have given it would have been to unduly emphasize the issue, and, in view of the wording of the special charge refused, the court was not only justified in refusing it, but would have committed error had he given it.

The testimony, the exclusion of which is complained of in assignments 18 to 24 inclusive, is of the same character as that considered in disposing of assignments 7 to 13. In fact, for authorities and remarks we are referred to the seventh assignment. The assignments are all overruled.

[3, 4] By the twenty-fifth assignment complaint is made of the overruling of a motion in writing to have jurors summoned who had been selected by the jury commissioners but not summoned by the sheriff. The facts, as disclosed by the bill of exceptions, are: That the jury commissioners selected 25 jurors for the seventh week of court. The list was issued July 2, 1917, and returned July 30, 1917; the sheriff showing by his return that 10 of the jurors were served by notice in person, and that the remainder were not served because "not found after due diligence and search." The case was set on August 1, 1917, by agreement of counsel, for the seventh week of the term, which week began on September 10, 1917. On Monday, September 10th, it appearing to the court that a sufficient number of jurors were not in attendance, the panel was completed in the manner prescribed by law, and the jury impaneled, including the original 10, and sworn as jurors for the week. Other cases were tried by juries selected from such panel, and on September 14, 1917, when this cause was called for trial, the jurors thus impaneled were in attendance on court. The plaintiffs made an oral motion, in substance the same as the written motion, which was overruled. In the written motion plaintiffs alleged that the return stated the conclusion of the sheriff, and did not state facts showing any diligence, or reason why the jurors were not summoned; that some of the jurors, and it may be many of them, were qualified jurors and lived in Nueces county; that the sheriff in fact used no diligence to summon them, and that one of them lived on a farm about seven miles from Corpus Christi. They prayed that they be permitted to question the sheriff as to the residence of said jurors, their availability at that time, and the steps taken to summon them, and requested that the sheriff be required to amend his return and state the facts showing what diligence, if any, he used in an effort to summon said 15 jurors, and whether or not he left notice to them. They further prayed that he be required to summon said jurors forthwith to attend court, and that the jurors, when so summoned, be placed on the list of jurors for the trial of the case.

The defendants demurred generally to the motion, and alleged the facts, substantially as hereinbefore stated, and that, if the motion should be granted, it would tend to affect the disposal of the business of the court. The court sustained the general demurrer, and qualified the bill of exceptions by stating that the statements contained in the answer were at the same time made to appear to the court to be true and correct; that it was the opinion of the court that, even if the jurors were ordered to be summoned, they could not, if found, have been brought into court until after the setting of the case was lost, which would have resulted in a continuance; and that everything appeared to the court as regular, other cases having been tried before the same panel, and the parties having agreed to a setting of the case for the particular week, with their eyes open to the fact that all of the jurors had not been found. As the court did not permit the plaintiffs to interrogate the sheriff, or require the sheriff to amend his return, it must, we think, be presumed that the court was of the opinion that,

even though the sheriff had failed to do his duty under the law, plaintiffs were not entitled to object to the panel, which, under the provisions of the statutes, had been provided to serve for the seventh week. The court is not required to try the question of the diligence of the sheriff before causing sufficient jurors to be summoned to make up a suitable panel for the week, but, in order to proceed with the dispatch of business, may complete his panel as provided by articles 5167 and 5168, R. S. 1911, regardless of the reasons for the absence of the jurors selected by the jury commissioners. G., H. & S. A. Ry. Co. v. Perry, 38 Tex. Civ. App. 81, 85 S. W. 63. If it were conceded that circumstances might exist which would require of the court such relief as was prayed for in the motion, it appears to us that steps should be taken to invoke action by the court at a time when it would not require the discharge of a portion of a panel from which cases had been tried for four days out of the week. We overrule the assignment.

The judgment is affirmed.

### On Motion for Rehearing.

We shall not undertake to state every fact submitted to the jury, or the conflicting testimony as to material issues, and therefore refuse the request for additional findings, set out in the motion to the extent of more than 30 pages. Our conclusions of fact have been stated in the original opinion. We will briefly discuss the appellants' contention that certain rules of law require that the evidence in this case should be held insufficient to sustain the verdict, and in doing so it will be necessary to state briefly some of the facts proven.

The contestants called Walter F. Timon to testify, and proved by him that his mother lived alone, after the death of his father, in Corpus Christi, from the year 1900 to the time of her death, December 30, 1914. He was the only one of her children who resided in Corpus Christi until May, 1912, when E. C. Timon moved to that city. Walter Timon, when in the city, visited her daily, after he moved to Corpus Christi in 1902, and looked after her welfare, and after 1907 assisted her with her business affairs, such as renting houses, collecting rents, and payment of taxes. If she consulted any other lawyers during that time, or any intimate friends, he did not know of it or recall it. He had no knowledge of his mother consulting with any one except himself concerning the making of the will. He testified that upon one of his visits his mother was reading a newspaper, and called his attention to the fact that some one's will had been probated, and stated that she was thinking seriously of making a will, to which he replied that every one ought to make a will; that she stated she would have given all of her property to his little boy, if he had lived, and that she felt she ought to leave it to him, because he had been so good and kind to her; that he told her to please not make such disposition of her property, and she told him he was a goose; that she told him to bring some paper the next day and take down a memorandum of her will, and then take it over to a lawyer to have him rewrite it; that he came the next day, and she dictated the disposition she wanted to make of her property; that he wrote the legal phraseology; that he made no suggestions whatever as to the manner in which any portion of the property should be devised; that Mr. Kleberg, of the firm of Kleberg & Stayton, prepared the will; that it was copied off or reduced to typewriting in Kleberg's office, but he did not recollect who did the typewriting. He testified that he took the will to his mother, and read it to her, and she read it over carefully, he thought, three times; that he left the will with her; that she asked him to have Hugh Sutherland and Joe Downey come there to witness the will; that he told them of his mother's wish; that he was at his mother's house while the will was being signed, but did not go into the room where his mother and the witnesses were signing the will; that he did not think it a proper place for him to be, and so did not go in; that afterwards, he thought the next day, his mother gave him the will to place in the First State Bank; that he did so, and it remained there until after her death, when he took it out and made application to have it probated. He informed no one of the existence of the will until after it was admitted to probate.

Appellants deduce from this testimony, and the disposition made by the testatrix of her estate, the following propositions: (1) That Walter Timon stood in a confidential relation to his mother; (2) that he wrote the will; (3) that he took approximately $200,000 under the will out of an estate worth $500,-000 to $550,000; (4) that he maintained secrecy with regard to the execution and existence of the will; and that he had ample opportunity for exercising undue influence. They also contend that the will is unjust and unnatural, in that the children of Mrs. Timon's deceased son, John, and her daughters, Mrs. Leahy and Mrs. Dolan, are pretermitted. It appears that John Timon and Mrs. Leahy left the parental home about the year 1879 or 1880, and were given a ranch by their parents, which was charged against them as an advancement after the death of their father. The other children stayed at home. Walter Timon and E. C. Timon testified that Mrs. Timon was not satisfied with the partition made, in so far as it involved John Timon and Mrs. Leahy. Walter Timon stated that this dissatisfaction arose from the fact that the ranch was put in at its value when received, instead of at the date of the partition. He and one of his brothers also testified that it was understood, when John Timon and Mrs. Leahy received the ranch, that

it was all they were to receive. In fact, Walter Timon testified that his mother told him that the reason they should not have any of her property was because the division made after the death of her husband was unfair, and that they got too much. As to Mrs. Dolan, whose son was bequeathed a portion of the property, a motive for pretermitting her was testified to by Walter Timon, in that he stated she and her mother had frequent bitter disputes, and that Mrs. Dolan was unkind to her mother. That the relations between Mrs. Dolan and her mother were strained is shown by a letter written by Mrs. Dolan to Walter in December, 1910, in which she states that she guessed her mother was still "sore" at her, and requested Walter to ask Mrs. Timon to make her a loan.

There is testimony from which the jury could find that Harry, E. C., and Walter Timon assisted in building up the parental fortune, and that Mrs. Barry visited her mother more frequently than the other sisters, and that Mrs. Barry visited her mother very often, and showed her many courtesies, and that the relations between them were very pleasant. There was also testimony from which the jury could find that Mrs. Timon had stated that her property was for all of her children, and had mentioned an intention of giving, without stating how, each of her daughters a house in Corpus Christi, which the witnesses stated were built exactly alike, but which were shown by Walter Timon's testimony to be very materially different in size and value. The most valuable of the three was devised to Harry Timon Dolan. It would be useless to discuss all of the testimony. The above is stated merely for the purpose of showing what light the jury had upon the question whether the fact that certain children were pretermitted made the will such an unnatural and unjust one as to stamp it with suspicion.

It is of course well established that fraud and undue influence may be proved by circumstantial evidence, and appellants take the propositions above stated as deduced by them, and contend that the undisputed facts raise a presumption of fraud and undue influence, which they say must be overcome by the proponents by clear and satisfactory evidence, or at least by a preponderance of the evidence. The circumstances relied on are recognized by courts and text-writers as suspicious ones, which, however, as far as we can ascertain, furnish no such presumption as would authorize a charge shifting the burden of proof, but which do raise presumptions of fact of more or less strength, in view of the other facts adduced, to be weighed and considered by the jury in determining the final issue whether the contestants have, by a preponderance of the testimony, shown that the will was procured by fraud or undue influence. In support of this view we cite Schouler on Wills (5th Ed.) §§ 246, 231,

238, 239, 245, 247; Alexander on Wills, §§ 394, 585 to 588, 594 to 597, 615; note, 28 L. R. A. (N. S.) 275. We consider our cases to be in line with the above statement. Barry v. Graciette, 71 S. W. 309; Patterson v. Lamb, 21 Tex. Civ. App. 513, 52 S. W. 98; Goodloe v. Goodloe, 47 Tex. Civ. App. 493, 105 S. W. 533; Gallagher v. Neilon, 121 S. W. 565; Mayes v. Mayes, 159 S. W. 919; In re Bartels' Estate, 164 S. W. 859; Beadle v. McCrabb, 199 S. W. 355.

We do not regard the cases of Vickery v. Hobbs, 21 Tex. 571, 73 Am. Dec. 238, and Kelly v. Settegast, 68 Tex. 13, 2 S. W. 870, as being in conflict with the rule as above stated by us. There are expressions in the opinion in such cases, made in discussing the evidence, to the effect that the circumstance that a beneficiary wrote the will is a suspicious one, and it ought to be made to appear clearly and satisfactorily that the testator was not imposed upon. These cases cannot be construed as announcing a rule that the burden of proof shifts, so that the court would be authorized to charge thereon, but are to the effect that a circumstance which is so strong in connection with the other facts as to raise a presumption of fact that the testator did not know the contents of a will can only be removed by testimony showing clearly that he did know such contents. In the case of Rounds v. Coleman, 189 S. W. 1086, the court appears to have been inclined to adopt appellants' theory that the burden of proof shifts, and that the rule as to confidential relations is the same with respect to wills as to gifts inter vivos, but found it unnecessary to decide the point for the reason that it held there was no fiduciary relation to call for the application of any such rule. There is ample authority for the proposition that the strict rule applied to gifts inter vivos does not apply in the case of wills. Schouler on Wills, § 246; note, 22 L. R. A. (N. S.) 1034. In the case of Bancroft v. Otis, 91 Ala. 279, 8 South. 286, 24 Am. St. Rep. 904, the court discusses at length, and very satisfactorily, the reasons upon which the difference is founded.

[5, 6] The appellants made no objection to the charge of the court as to the burden of proof and no request for a special charge on the theory that the burden shifted; but, as we understand their contention, it is that this court, in weighing the evidence, should place the burden, at least as to fraud and undue influence, upon the proponents, and determine whether by clear and satisfactory evidence, or at least by a preponderance of the evidence, they have affirmatively proved there was no fraud or undue influence. Our conclusion is that by the great weight of authority the burden of the whole case remains upon the contestants as to fraud and undue influence. The circumstances designated by courts and text-writers as sufficient to cast suspicion upon the will must be weighed by the jury in connection

with the other evidence, and it is obvious that the strength of any presumption of fact to be drawn therefrom is dependent upon the other facts in the case. However, if the testimony as a whole supports the verdict, it must be upheld, and questions of credibility must be decided so as to support the verdict. The evidence was sharply conflicting on the issue of mental capacity and whether or not Mrs. Timon had sufficient eyesight to read at the time she signed the will. Taking the testimony favorable to the verdict as true, it appears that Mrs. Timon was not only of sound mind, but that she was a woman with a vigorous mind, of good business ability, who had ample intelligence and capacity to fully understand and comprehend the language in which the will was drawn. In this connection we will state that the will was drawn in very plain terms. No one who read it could have any doubt as to what each person mentioned therein was to receive, and that the entire estate was disposed of. It also appears that Mrs. Timon could read by the aid of her glasses, that she had the will in her possession, and had ample opportunity for acquainting herself with its provisions. One of the subscribing witnesses asked her, or stated to her, in a manner implying a question, that she had read it over and knew it was her will, and she replied, "Yes, and it is all right." The testimony of Walter Timon also shows that he read the will to her, and that she read it herself several times. The testimony supports a finding that Mrs. Timon was a woman of great strength of character, independent and determined, who thought and acted for herself, and could not be easily influenced by any one. In view of all of this, the jury was warranted in finding that she actually read and understood the will. It is true that Walter Timon assisted her in such small legal matters as presented themselves after 1907, and helped her rent her houses and collect rent; but the evidence discloses that even in such matters she reserved the ultimate control of her business affairs, and acted contrary to his advice upon certain occasions. The facts were not such as to create what the law would term the confidential relation of attorney and client, for what he did for her was because she was his mother, and the relation of mother and son, between whom there existed a deep affection, precluded the more distant one of attorney and client. Mr. Alexander states in section 594 that:

"The effect of a confidential relationship between testator and legatee, as suggestive of undue influence, is materially different where the legatee is a child, not a stranger, for in the former case the relationship of strict confidence and of participation in the testator's estate is natural."

According to Walter Timon's testimony he gave her no advice as to how to devise her property, other than that he told her not to bequeath it all to him. Much is said concerning the proposition that it was not shown that Mrs. Timon had competent and disinterested advice, and that Walter Timon did not give her full and disinterested advice, and it appears that this is regarded as conclusive ground for setting aside the verdict. It is true that Walter Timon gave her no advice, except not to will all of her property to him. We do not understand that he was called upon to press the claims of others. The matter of advice does not, as we understand it, go to the question of who is to receive the property, but to the question of whether the testator is fully informed as to the actual contents and meaning of the will. If the testatrix has a mind capable of comprehending and fully understanding the provisions of the will, and is shown to have had it read to her correctly, or to have carefully read it herself, we fail to see how it would be necessary for her to have any advice. The absence of advice can only be a circumstance to be considered by the jury, and the weight of such circumstance is necessarily dependent on the question whether the terms of a will are plainly drawn, and whether the testatrix is intelligent enough to read and understand the same.

[7] The appellants could not place Walter Timon on the stand without incurring the risk that his testimony would be believed by the jury, and, the jury having believed it, they cannot contend that this court is authorized to discredit it. His testimony as a whole is sufficient to destroy any inferences of fraud or undue influence which can be deduced by considering only certain facts to which he testified. The case is one in which an appellate court, in our judgment, cannot set aside the verdict without a clear invasion of the province of the jury, or giving conclusive effect as a matter of law to certain suspicious circumstances, which we regard as under the great weight of authority to be merely inferences or presumptions of fact to be weighed by the jury.

The motion for rehearing is overruled.